THE TRAVELERS' INSURANCE COMPANY OF HARTFORD,
CONNECTICUT,

*v.*

JAMES J. GRANT, administrator of Frank E. McNichols, and
MARTHA E. McNICHOLS, administratrix of the same·
person, deceased.

1. A policy of life insurance payable to "the legal representatives of the
assured" may be made the subject of a gift in the same manner as a bond or
other moneyed obligation, with the same results.

2. Such gift may be effected by the mere delivery, without assignment, of
the instrument, accompanied by such verbal or written words as indicate a
clear intention to give, and its subsequent retention by the donee.

3. In such case the donee, if he or she have an interest in the continuance
of the life of the assured, will be entitled, in equity, to the money due upon
the policy at its maturity, notwithstanding it contains a clause forbidding any
assignment except with the consent of the insurer. Such prohibitory clause
cannot prevent the vesting of an equitable interest in the proceeds of the
policy.

4. A person whose domicile was originally in New Jersey and who had a
wife and family residing there, acquired a domicile in Ohio and died there
insolvent. Letters of administration were taken out, first in Ohio by a resi-
dent there, and later by his widow in New Jersey. He had given his wife
a policy of insurance upon his life, payable to his legal representative, the
annual premium upon which was less than the amount allowed by the laws of
Ohio to be set apart annually in life insurance by a husband for the benefit of
his family. Both administrators brought separate suits at law against the
insurance company upon the policy so given to the wife and in her posses-
sion—one in Ohio, the other in New Jersey. The insurance company filed a
bill of interpleader in the chancery court of New Jersey, paid the money into
court; the Ohio administrator appeared and claimed the fund for the purpose
of paying the Ohio creditors; the New Jersey administratrix claimed it as
her own money, after paying the New Jersey creditors to the extent of pre-
miums paid after the accrual of their debts.—*Held*, that the Ohio administra-
tor was not entitled to the fund, but that it should be paid to the New Jersey
claimant, subject to the rights of the creditors.

Bill of interpleader. Heard on pleadings and proofs upon
issue joined between the defendants.

This is a bill of interpleader. The contesting defendants are, on the one part, James J. Grant, administrator *cum testamento annexo* of Frank E. McNichols, deceased, appointed by the probate court of Stark county, Ohio, January 17th, 1894; and, on the other part, Martha E. McNichols, individually and as administratrix of said deceased, who was her husband, by letters issued to her at a date subsequent to January 17th, 1894, by the orphans court of Camden county, in this state.

The subject of the contest is the sum of $3,181.50, paid into court by complainant as the amount due upon two policies of insurance issued by it upon the life of the decedent, and to recover which a suit was brought in an Ohio court by the defendant Grant, as administrator, and later, another in the supreme court of New Jersey by the defendant Martha McNichols, as administratrix.

The decedent died on the 10th of January, 1894, testate of a will which dealt solely with the proceeds of a third policy of insurance, issued upon his life by another company, and wholly intestate as to all other property, including, of course, the policies which produced the fund here in controversy. The latter were, from shortly after the time of their issuance, in the possession of Mrs. McNichols, the defendant, who had her residence in this state. She sued the complainant as administratrix, but claims here both as administratrix and in her individual right as donee of her husband, the deceased.

The domicile of birth and residence for many years, of the deceased, was in New Jersey. He married and kept house here for many years, with his wife and their children, four daughters, still living. His business was that of a contractor for public works, and he followed it at a distance from his home, and finally located at Canton, Ohio, and acquired a residence and voted there for two or three years before his death, which occurred there. All the time, however, he maintained his wife and daughters in this state, in a house which he provided for them, and visited them frequently.

The first policy in the complainant company was issued July 18th, 1885, for $1,000, subject to an annual payment of $32.40,

and declared to be payable " to the legal representatives of the assured," and containing a provision

" that no assignment of this policy shall be valid unless made in writing, indorsed hereon, and unless a copy of such assignment shall be given to this company within 'thirty days after its execution; and any claim against this company, arising under this policy, shall be subject to proof of interest. It is also agreed that the company shall not be held responsible for the validity of any assignment."

The second policy was issued June 29th, 1891, for $2,000, subject to an annual premium of $79.30, and is declared to be payable to " his " (McNichol's) legal representatives or assigns, and contains a proviso that

" No assignment hereof will be noticed by this company unless made in writing, the original or a copy attached hereto, and a copy furnished this company immediately on its execution; but this company will not be held responsible for its validity."

These policies were, shortly after issuance, sent through the mail by McNichols to his wife, with a letter stating in substance that he gave them to her for her own benefit. The letter which accompanied the first policy has been lost, but its contents are satisfactorily proven by both Mrs. McNichols and one of her daughters. That accompanying the second policy has been preserved and reads as follows :

" Canton, Aug. 21st, '91.

"Dear Old Doman—Enclosed you will find Policy of Travelers Ins. Co. on my Life for $2000.00 (two thousand Dollars) & Receipt for first year's Premium. Also Copy of letter acknowledging Receipt of Payment of Premium on the Policy you now have, the Receipt was Lost in Transit by Mail. So they Send me copy of letter in Duplicate and will Send me Duplicate Receipt Soon as they can get it from Home Offices.

"Preserve this letter, & in the Event of anything Happening to me you would have no Trouble in Proving your Claim. This Policy is Entended for you alone.

"Love to all.

" H. & P." (meaning Husband and Papa.)

Creditors' claims to a small amount for debts incurred in this state have been presented to the administratrix here, and claims for debts incurred in Ohio, amounting to about $18,000, have

Travelers' Insurance Co. *v.* Grant.

been presented to the Ohio administrator and allowed by him. The assets of the estate in Ohio, including the policy of life insurance disposed of by the will, amount to from $12,000 to $15,000, showing a deficiency sufficient to absorb the whole of the fund in court if awarded to the defendant Grant. There are no assets in this state other than the fund here in question. No proof was given as to when any of the Ohio debts originated, A part of them are secured by a mortgage upon lands owned by deceased and which form a part of the assets above mentioned.

A statute of Ohio was put in evidence authorizing a debtor to invest a sum not exceeding $150 per year in insurance on his life for the benefit of his family.

*Mr. Benjamin F. H. Shreve,* for Grant.

*Mr. John F. Harned* and *Mr. Schuyler C. Woodhull,* for Mrs. McNichols.

PITNEY, V. C.

A consideration of the facts shows that the controlling question in the case is whether there was an effectual gift by the husband to the wife of the policies in question which entitles her, as against the next of kin and creditors, to the fund in court. For conceding, as I think I must upon the evidence, that the domicile of the decedent was in Ohio, yet it was not contended that the letters of administration granted in this state to the widow were void, for want of power, but their validity was conceded. The argument was that the Ohio administration must be taken as the principal, and the letters granted here as ancillary merely.

But granting this subordinate position to Mrs. McNichols, it does not follow that the fund must be awarded without question to the principal administrator. The policies were found in this state at the decedent's demise, and the foreign administrator did not bring suit here to recover their possession. The fund is in this state. The foreign administrator has submitted to the jurisdiction of this court. The next of kin (assuming that the laws

of Ohio designating who shall be considered the next of kin of
a decedent correspond with our own) are all residents of this
state, and the fund is claimed as against the next of kin and
creditors by a resident of this state, who is a party to the suit
and has submitted her claim for adjudication in this court.
Under these circumstances, I think this court ought not to send
this claimant and the next of kin to a foreign tribunal to litigate
over the fund.

The facts of the case are similar, in the main, to those under
consideration in *Morrill* v. *New England Insurance Co., 103
Mass. 245*, except that the questions arose there upon the trial
of the suit at law brought by the ancillary administrator against
the insurance company pending the suit first brought by the
principal administrator in the court of his domicile, and the
transfer of the policy was in pledge to secure· a debt of the
assured of less amount, with written directions by the assured to
the pledgee to pay the surplus to the heirs of the insured, who
lived in Massachusetts. It was held, after full consideration of
the rights of the principal administrator, that the ancillary
administrator was entitled to recover. And see *Story Confl. L.
§ 514 et seq.*

This brings us to the consideration of the question of the
validity of the gift.

It seems to be well settled that bonds and other non-negotiable
obligations for payment of money may be the subject of a valid
gift, and that a delivery of the obligation to the donee, without
written assignment, but with a clearly-manifested intention to
make a gift, is sufficient to satisfy the rule requiring delivery of
the thing given. The sensible rule is that the delivery must be
such a tradition as the nature of the subject admits of. And
surely the delivery of the formal writing which evidences the
debt and forms the foundation of the right of action is the best
and only delivery of which the subject is capable. *Snellgrove* v.
*Baily, 3 Atk. 214; Duffield* v. *Hicks, 1 Dow & C. 1; S. C.,
1 Bligh (N. S.) 497;* on appeal from *Duffield* v. *Elwes, 1 Sim.
& S. 239; Veal* v. *Veal, 27 Beav. 305; 6 Jur. (N. S.) 527; 29
L. J. Ch. 321; Grover* v. *Grover, 24 Pick. 261.* The same has

been decided as to savings bank pass-books. *Tillinghast* v. *Wheaton, 8 Rev. L. 536; 5 Am. Rep. 621; Camp's Appeal, 36 Conn. 88; Sheedy* v. *Roach, 124 Mass. 472; Bond* v. *Bunting, 78 Pa. 210.*

The law is settled in this state, as to promissory notes, in *Corle* v. *Monkhouse, 5 Dick. Ch. Rep. 537* (at *pp. 543, 544*), by the late Vice-Chancellor Van Fleet. The cases cited refer to bonds and notes not payable to. bearer, and not assigned or endorsed by the donor.

In such cases it is held that where the strict rules of the common law prevent the donee from suing in his own name upon the unassigned instrument, he is entitled to sue in the name of the donor or his personal representative to the donee's use. See *Thornt. Gifts* § *267 et seq.*

I am unable to perceive any distinction: between a bond or promissory note and a policy of life insurance. Each is a contractual obligation to pay money at a certain time. If the mere delivery of a common money bond, or of a promissory note not payable to bearer, without assignment of the one or the endorsement of the other, but accompanied with words of gift, is sufficient to entitle the donee, as against the donor and his representatives, to demand and receive the money from the obligor or promissor, then I am unable to see any reason why, under like circumstances, the donee of a life insurance policy should not be vested with like rights. The authorities so hold. *Witt* v. *Amis, 1 Best & S. 109, 7 Jur.* (*N. S.*) *499,* was an action of trover by the personal representative of a decedent whose life had been insured to recover possession of the policy from the defendant to whom she had given it by simple tradition, without written assignment, but accompanied by words of gift. The court of queen's bench, after consideration by Chief-Justice Cockburn, held that there was no distinction between a bond and a policy of insurance in this respect and gave judgment for defendant. About the same time (but whether before or afterwards does not clearly appear) a bill was filed in equity to perfect the gift and to get actual possession of the fund, and Lord Romilly held that the donee of the policy was entitled to the money due

upon it. *Amis* v. *Witt, 33 Beav. 619.* And this is the settled law, although Lord Cairns afterwards, in *Rummen's* v. *Hare, L. R. 1 Ex. Div. 169 (1876),* in delivering judgment of the court of appeals in a case like *Witt* v. *Amis,* said that the right to the possession of the policy did not fully determine the right to the moneys due upon it. Such remark was thrown out merely to guard against prejudicing any equitable rights in the fund which might exist in other persons, the only question submitted to the jury in that case being as to the right to the possession of the document.

The distinction between the ownership of a policy of life insurance and the ownership of the money to be paid thereon upon its maturity arose out of the administration of the English bankrupt laws applied to a policy upon the life of a bankrupt yet living, the question being as to what chattels were " within the disposition of the bankrupt." *Gibson* v. *Overbury, 7 Mees. & W. 555; Green* v. *Ingham, L. R. 2 Com. Pl. 525 (1866).* In *Phipard* v. *Phipard, 55 Hun 473,* an executrix collected the money due on a policy of life insurance found among the testator's papers, to which was attached a paper in his handwriting declaring that it was for the benefit of his children, and it was held that the children were entitled to recover the amount from the executrix. In the *"Appeal of Madeira,"* in the supreme court of Pennsylvania, *4 Atl. Rep. 908,* the question was elaborately argued and fully considered, and it was held that a husband could effectually give to his wife by parol, without assignment, but with the delivery of the writing, a policy on his own life payable to his legal representatives.

In *Janes* v. *Falk, 5 Dick. Ch. Rep. 468,* our own court of errors and appeals held that a person holding a policy of life insurance on his own life could pledge it as security for a debt which he owed to an estate of which he was an executor, by simply placing it among the papers of the estate in his own possession with a note or memorandum that it was held for the benefit of the estate. The contest was between a judgment creditor of the deceased, who had procured a vesting order under supplemental proceedings during his lifetime, and the representatives of

the estate to which the deceased was a debtor.   There was in that case a formal assignment of the policy executed by the decedent after the vesting order took effect, and dated back to precede it, but the court relied only upon the original deposit and memorandum, and not upon the assignment.   The point of the case, for present purposes, is that the policy of insurance was treated as any other obligation.

Finally, in the recent unreported case of *Logan* v. *Logan*, in the prerogative court of this state, upon appeal from the Camden orphans court, the present chancellor has substantially decided the very question.   There the widow, who was administratrix, had already collected the money, and the question was whether she should be charged with it.   There being satisfactory proof that testator had given and delivered the policy to his wife in his lifetime, the learned chancellor held that she should not be charged with it as administratrix.

The counsel for Mr. Grant, however, rested his elaborate and able argument mainly upon the ground that, by the terms of these policies, no interest could vest in the donee unless a formal assignment, endorsed thereon, was executed and notice given to the insurer.   The clauses regulating assignments are not the same in both policies; that in the first policy is much more rigorous than that in the other, but I think neither can have any effect upon the present issue.   The contest, so far as the complainant is concerned, was not between assignor and assignee, but between the two several personal representatives deriving authority from separate jurisdictions, and each claiming the money, not as assignee, but as personal representative.   The only defence complainant could have to either was that judgment had been recovered by one and the money paid.   The complainant being thus subject to two suits, came voluntarily into this court and asked to be discharged from all liability, upon terms of paying the money here.   This has been done. The foreign administrator has submitted to our jurisdiction, and the question to be determined is, which of these personal representatives shall have the money?   The one appointed by the court of this state claims it because she will hold it, when re-

ceived, in trust for herself after paying certain creditors domiciled here. The question was raised in *Morrill* v. *New England Insurance Co.*, *supra*, and it was held that such a clause could not be set up in that case, which we have seen is similar to this. To the same effect is *Marcus* v. *Insurance Company, 68 N. Y. 625*, reversing the same case as reported in *7 Hun 5*. There the action was brought by the donee without assignment, against the insurance company, and recovery was had, notwithstanding a restrictive clause against assignments.

Counsel, however, relies upon the case of *Stevens* v. *Warren, 101 Mass. 564*. That was an interpleader in equity, brought by the administrator, who had collected the money, to compel the next of kin and an assignee of the policy to litigate as to the right to the fund. The policy contained a clause like that in the first policy herein, and the assignee had no interest in the life of the assured. The court based its decision against the assignee mainly on the ground of public policy, it being the rule in Massachusetts "that no one can have an insurance upon the life of another unless he has an interest in the continuance of that life." The court said that the purpose of the clause found in the policy there under consideration was to guard against the "increased risk of speculating life insurance." The case has no application here, because, first, the wife had an undoubted interest in the continuance and prolongation of her husband's life; and second, the complainant voluntarily paid the money into the court of a state whose courts have not adopted the policy in question, viz., that against life insurance in favor of parties who have no interest in the prolongation of the life of the assured. The authorities are *Trenton Mutual Life Insurance Co.* v. *Johnson, 4 Zab. 576; Martin* v. *Insurance Company, 9 Vr. 140, 141; De Ronge* v. *Elliott, 8 C. E. Gr. 491; Vivar* v. *Supreme Lodge of Knights of Pythias, 23 Vr. 455* (at *p. 469*); and see upon the general subject, *Am. Law Rep. & Rev., Feb. No., 1896*, and cases cited.

The counsel further relied upon the case of *American Legion of Honor* v. *Smith, 18 Stew. Eq. 466*, also an interpleader. That case has no application here. The wife was originally

Travelers' Insurance Co. v. Grant.

named as the beneficiary in the policy or certificate which was issued by a company whose charter required that the benefits of membership should go to a certain class of relatives.  The donor had attempted to change the beneficiary without the consent of the person originally named, and without surrendering the original certificate, or otherwise conforming to the rules of the society governing such change.  Clearly, the donor having once named the beneficiary and delivered the certificate to her could not revoke it and give it to another without the consent of the first beneficiary, unless he did it in strict accordance with the terms of the right of revocation and change prescribed by the charter, constitution and by-laws of the association, which in that class of cases form a part of the contract between the parties. To hold otherwise would be to sanction an unlawful interference with vested rights.

Several other cases were cited by counsel for .Mr. Grant, which upon examination turn upon substantially the same questions as did the case last referred to.  · None of them go so far as *Stevens* v. *Warren, supra;* and I find no well-considered authority for the position that the beneficiary named in an ordinary policy of life insurance may not create an equitable interest therein in his wife or other person interested in the prolongation of his life which shall bind his legal· representatives, without the sanction of the company which writes the policy, notwithstanding it contains a clause like that here in question.

I conclude, therefore, that the clauses in question do not stand in the way of the vesting in equity of this gift.

Nor do I find any ground for holding it void as a testamentary disposition.  It was a gift *in præsenti* of the policy and all the donor's interest in it.  The donor could not recall the gift, and the donee might have herself paid the premiums and kept the policy alive if the donor had failed therein.  Every payment of premium made by the husband was an additional present irrevocable gift to his wife.  Every such payment made was, under the circumstances, a ratification of the original gift of the policy.

I am satisfied that the case in hand makes a valid gift to the wife, and that she is entitled to the fund, except as against such

creditors in this state whose debts arose prior to any of the payments. As to those the gift is void, on the ground that it is a fraud upon creditors. *Merchants' and Miners' Transportation Co.* v. *Borland, 8 Stew. Eq. 282.*

A statute in Ohio authorizes a husband to set aside a sum, not exceeding $150 a year, to create a life insurance in favor of his wife or family. The result is that, so far as the creditors in Ohio are concerned, they can have no claim. They are properly represented by the foreign administrator.

With regard to the next of kin, who are the only parties besides creditors who are interested adversely to Mrs. McNichols, they must be ascertained also by the statutes of Ohio, and for the purpose of proving those statutes the case may be opened. As one of the children is an infant, Mrs. McNichols' cross-bill may be amended by making the children parties, and if it shall turn out that Mrs. McNichols and her daughters are the only next of kin, then a decree can be made which shall bind them, and the fund may be awarded finally to Mrs. McNichols in her individual capacity, but such decree cannot bind the creditors in New Jersey, who are not here properly represented by Mrs. McNichols, because their interests are adverse. Hence, no decree can here be conveniently made which will bind them, but Mrs. McNichols, as administratrix, will be liable to be called to account by them in the orphans court of Camden county.