## McKown's Estate (No. 1.)

*Husband and wife—Life insurance—Assignment of policy to wife—Creditor.*

A husband who has insured his life, and has made the policy payable to his executors, administrators or assigns cannot, when insolvent, assign such policy to his wife, where it appears that the husband received no consideration from the wife for the policy, that upon the taking out of the policy he had handed it over to his wife, and several years afterwards when insolvent assigned it to her in writing, but without her knowledge.

Argued Oct. 23, 1900. Appeal, No. 77, Oct. T., 1900, by Elizabeth McKown, from decree of O. C. Allegheny Co., April T., 1899, No. 51, dismissing exceptions to adjudication in the estate of James C. McKown, deceased. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Exceptions to adjudication.

The facts appear by the opinion of Crawford, P. J., specially presiding, which was as follows:

Elizabeth C. McKown, executrix of James C. McKown, deceased, has filed a final account in which she charges herself with assets amounting to $24.00, and taking credit for the payment of medical and funeral expenses, with the costs incident to the settlement of her account, she claims a balance due her as accountant of $279.40.

Three exceptions have been filed by the Manhattan Life Insurance Company, a creditor of James C. McKown, deceased.

Under the evidence submitted, the only question raised by these exceptions is, whether or not the accountant should be surcharged with the sum of $10,775.52, collected by her as executrix from the Manhattan Life Insurance Company upon a policy issued by that company upon the life of her husband, James C. McKown. The facts of the case are as follows:

On April 11, 1883, James C. McKown took out a policy for $10,000 upon his life in the Manhattan Life Insurance Company, payable upon satisfactory proof of death to the "executors, administrators or assigns " of said McKown.

About a year after this, he took out a second policy for $10,000 in the same company, in which policy his wife, Elizabeth C. McKown, was named as beneficiary. Upon the latter policy, the company paid Mrs. McKown $10,000 after the death of her husband, without contest. James C. McKown died on June 2, 1897. In 1892, and for some time prior thereto, Mr. McKown was in the employ of the Manhattan Life Insurance Company as their agent in Pittsburg, Pa., and continued to act as such up to November, 1893. On October 23, 1893, McKown made a voluntary assignment to his wife, Elizabeth C. McKown, of policy No. 48,614, taken out by him in the Manhattan Company in April, 1883. Mrs. McKown, as her own testimony shows, knew nothing of this assignment until after the death of her husband. At the date of this voluntary assignment to his wife, McKown was largely indebted to the Manhattan Life Insurance Company. At No. 19, May term, 1894, in the circuit court of the United States, western district of Pennsylvania, this company brought suit against McKown to recover for alleged defalcation on his part as their agent, and obtained judgment against him, November 18, 1894, for $28,346.05. In September, 1895, McKown borrowed $400 from the Pittsburg Bank for Savings, and his wife, Elizabeth C. McKown, on the

date of September 23, 1895, executed an assignment of this policy of insurance to the bank as collateral security for the loan made to James C. McKown. The bank wrote to the Manhattan Life Insurance Company, under date of October 3, 1895, as follows :

"Gentlemen : We have assigned to us as security for a loan, policy No. 48,614, on life of James C. McKown, assigned by him to E. C. McKown, in 1893, and by E. C. McKown to us September 23, 1895.

"Please let me know the surrender value of the same at once by wire, if you will, at our expense.

"Very truly,

(Signed)          "GEO. SHEPPARD, Treas."

In response to this, the bank received, October 4, 1895, the following telegram dated from New York:

"Pittsburg Bank for Savings,

"60 Fourth Ave., Pittsburg.

"Forty-eight six fourteen cash now four hundred sixteen dollars thirty-three cents.

"E. L. STABLER, Actuary."

Following this, notices of the premiums due upon the policy were sent by the Manhattan Company to the Pittsburg Bank for Savings, and between the time of the assignment and the date of his death, in June, 1897, McKown paid seven quarterly premiums upon this policy. The company wrote to the Pittsburg Bank for Savings, June 5, 1897, referring to the notice of assignment previously sent by the bank, and requested information as to the bank's claim on the policy, saying they were then informed of McKown's death, and desired to know the particulars that settlement might be made under the policy to the parties interested. Subsequently, Mrs. McKown paid off the bank's claim and took a re-assignment of the insurance policy to herself individually. The company having refused payment to her as assignee, she brought suit as executrix of James C. McKown for her own use against the Manhattan Company, at No. 4, May term, 1898, in the United States circuit court for the western district of Pennsylvania. The insurance company undertook to set off, against the policy sued upon, the

judgment they had obtained against McKown in his lifetime, but the court denied their right to do so in that action, and instructed the jury to return a verdict in favor of Elizabeth C. McKown, executrix, for the amount due on the policy. The reason of the court for refusing the company's claim of set-off, and directing a verdict as aforesaid, is given in the opinion filed in overruling a motion for a new trial as follows:

" The stipulation of the insurance company was to pay, after the death of the insured, to his personal representative. The debt sued for had no existence in the lifetime of the plaintiff testator. It came into existence after his death. It is true the policy itself was in existence before, but no debt of the company under it arose or could have arisen in the lifetime of the plaintiff's testator. These debts are not due in the same right. One of them is between the plaintiff's testator and the defendant. The other is between the defendant and the plaintiff as executrix. Now, at the moment of the death of the insured, the plaintiff as his executrix became trustee for all the creditors, whose rights to the assets of the estate then became fixed. The decedent's estate is insolvent, and to allow the set-off claimed here would disturb the course of administration. The motion for a new trial must be overruled."

The action of the court below was affirmed by the United States circuit court of appeals, the cause having been carried there. The records, exhibits and evidence offered before the United States circuit court and the United States circuit court of appeals have, by the agreement of counsel, been submitted for our consideration, so far as the same may be relevant in this proceeding. Mrs. McKown testified on the trial in the United States circuit court that her husband, upon taking out this policy, brought it home and gave it to her to keep, and that she kept it with his other insurance papers in her writing desk. That he said nothing particularly with reference to this policy when he handed it to her, but that she always thought it was her policy. That she had it in her possession until in September, 1895, when she assigned it to the bank as collateral for the loan made her husband. That she never knew until after her husband's death of the written assignment of October 23, 1893, in which he transferred this policy to her. In the hearing before this court, Mrs. McKown was examined, under ob-

jection, however, as to her competency as a witness, and she now says that when the policy was brought to her, her husband said, " Lizzie, I have taken a policy of ten thousand dollars on my life for you. Here it is. Keep it and take care of it. " Under these facts, has such a bona fide assignment of this policy been shown as will entitle the wife to hold it against the creditors of her deceased husband ? We do not think so. While, under the Act of April 15, 1868, P. L. 103, an insolvent person may make provision for his family or dependent relatives by taking out insurance for their benefit, two methods are recognized : First, where the beneficiary is named in the policy ; and second, where a policy previously issued shall be in good faith assigned to any of the class of persons mentioned. It is only where the title of the beneficiary arises by assignment that creditors can contest the rights of the assignee, for only in this class of cases can the question of good faith or fraud be raised : McCutcheon's App., 99 Pa. 137. In Woolston's App., 51 Pa. 455, the court says, " If any indebtedness to any amount be established at the time of a voluntary settlement, it imposes upon those claiming under it the duty of establishing the solvency of a sufficiency to rebut the presumption that such voluntary assignment was covinous." At the time McKown made this voluntary assignment of the policy to his wife, he was admittedly insolvent. The burden of proof is, therefore, upon her to show the bona fide character of the transaction and to repel the presumption of fraudulent intent as to creditors : Townsend v. Maynard, 45 Pa. 198. In Elliott's App., 50 Pa. 75, it was held that the assignment of policies of life insurance by a debtor when insolvent in trust for the benefit of his wife is fraudulent and void as against creditors. In the present case, it is not necessary to decide whether or not Mrs. McKown is a competent witness. Even treating her as such, we fail to find in her testimony, when considered with that she gave before the United States circuit court, and all the facts and circumstances shown, sufficient to rebut the presumption of fraud.

But it is here argued by accountant's counsel, that the Manhattan Company received notice of the assignment to Mrs. McKown by the letter from the Pittsburg Bank for Savings, when this policy was assigned to the bank for the $400 loan. There was certainly nothing in that notice which will operate to es-

top the Manhattan Company from presenting any proper claim they may now have as a creditor of James C. McKown's estate. Their consent to the assignment was not required by their contract, and McKown was at liberty to assign his policy to whom he pleased for a valuable consideration. The assignment to the bank was such, and the company could not object. Neither Mrs. McKown nor her husband, so far as it appears, ever in any way made known to the company the assignment to the wife until after the death of the husband, when the policy was reassigned to Mrs. McKown upon her paying to the bank $200, the balance then due on its note. Our conclusion is, that the assignment of this insurance policy by James C. McKown to his wife is fraudulent and void as to the creditors of his insolvent estate. However, since Mrs. McKown paid off the balance of her husband's indebtedness to the bank, she may, to that extent, be subrogated to the rights which the bank had under the assignment of the policy. Allowing reimbursement for the $200 and interest on the same from the time it was paid to the bank by Mrs. McKown, and allowing her also the $279.40 due her as accountant, her account will be surcharged with the balance of the $10,775.52 received by her as executrix of James C. McKown upon the judgment recovered against the Manhattan Life Insurance Company. There may be other creditors of James C. McKown, deceased, but if so, they have failed to present their claims at this hearing. Possibly they may ask to be heard before the matter finally passes from the hands of the court. The Manhattan Company being the only creditor now appearing, all we can do at this time is to direct that the balance of the fund in the hands of the executrix be applied to their judgment.

On rehearing the court entered the following decree:

And now, to wit: October 3, 1899, this matter came on for hearing, upon petition for rehearing, and testimony taken, and upon consideration thereof, it is ordered, adjudged and decreed, that the decree of distribution made in above case, dated May 26, 1899, be amended, by striking out so much thereof as distributes to Elizabeth C. McKown, $221.60, and the Manhattan Life Insurance Company, of the sum of $10,267.02. And it is further ordered and decreed that said sum, viz: $10,488.62,

be paid in accordance with the schedule of distribution, unless an appeal be taken herefrom within twenty days.

Distribution was made to sundry creditors of the decedent.

*Error assigned* was the decree of the court.

*Thomas Patterson*, for appellant.

*A. M. Woodward*, for appellee.

PER CURIAM, January 7, 1901:

We are not convinced of error in any of the assignments filed on this appeal. All the questions raised by them were thoroughly discussed and carefully considered by counsel and court previous to the appeal, and the conclusion arrived at was against the appellant's contention. In the opinion of the court on exceptions the principal matter passed upon was the appellant's claim to the policy issued in 1883. The claim was rejected and held to be in fraud of the creditors. In this we discover no error, and in connection with it we may add that we find nothing in the decree appealed from which requires a reversal or modification.

Decree affirmed and appeal dismissed at the cost of the appellant.