### NAVASSA GUANO CO. v. COCKFIELD et al.

(Circuit Court of Appeals, Fourth Circuit. April 3, 1918.)

No. 1578.

1. EVIDENCE ⬤＝68—PRESUMPTION—NATURAL CONSEQUENCES OF ACT.
    A person is presumed to intend the natural consequences of his acts.

2. FRAUDULENT CONVEYANCES ⬤＝139—FORM OF TRANSFER—INSURANCE PREMIUMS—RIGHTS OF CREDITORS.
    Where insured, knowing that he was insolvent and realizing he was about to die within a few days, attempted to change beneficiary of his policy, making it payable to his brother, instead of his legal representative, the transaction was fraudulent as to his creditors, although he did not intend to defraud creditors, and although policy by its terms had no surrender value; only two annual premiums having been paid thereon.

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Suit by the Navassa Guano Company against Elle Nixon Cockfield and George W. Dickson, as executors of the will of S. R. Cockfield, deceased, and others. Decree (244 Fed. 222) for defendants, and plaintiff appeals. Decree reversed in part, and cause remanded, with direction.

---

⬤＝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Philip H. Arrowsmith, of Lake City, S. C., and Henry E. Davis, of Florence, S. C. (Willcox & Willcox, of Florence, S. C., on the brief), for appellant.

A. C. Hinds, of Kingstree, S. C. (Kelley & Hinds, of Kingstree, S. C., on the brief), for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. The material facts appear to be these: On February 5, 1916, S. R. Cockfield, of Johnsonville, S. C., insured his life for $6,000, payable at his death to his legal representatives, and paid the first annual premium of $185.70. The policy contained this provision:

"The insured may, at any time while this policy is in force, by written notice to the company at its home office, change the beneficiary or beneficiaries under this policy, such change to take effect only upon the indorsement of the same on the policy by the company."

On February 5, 1917, the insured paid the second annual premium, partly by note secured by the policy, and thereby continued the insurance in force for another year. Three days later, February 8th, he was stricken with a serious and, as it proved, fatal illness. The next day, the 9th, or later, he wrote the insurance company:

"Inclosed please find policy 29888, which you will change the beneficiary and make it payable to Reamer L. Cockfield, related to me as brother. Please attend to this and return to me promptly."

Under date of the 13th, the company acknowledged receipt of the policy and request, and added:

"We attach a formal request to be complied with for this purpose. Have your signature witnessed by a disinterested party, return to us, and the matter will have our immediate attention. In the meantime your policy will be held in abeyance."

The insured died on the 16th of February, without having executed the "formal request." It is admitted that he was insolvent when his letter to the company was written and at the time of his death. Reamer L. Cockfield, the brother named in the letter, was a physician, and as such attended the insured in his last illness, and the trial court found in effect, and upon ample and convincing testimony, that S. R. Cockfield, when he wrote the insurance company, had been advised by his brother that his illness would probably terminate fatally. In a word, we take it to be established that the insured changed the beneficiary named in his policy, or attempted to do so, with full knowledge of his insolvency and in anticipation of death within a comparatively short time.

The suit is brought, as the decree appealed from succinctly states, "to subject the proceeds of this insurance policy, which the insurance company admits to be due and payable to the party who may be lawfully entitled, to the payment of the creditors of S. R. Cockfield, upon the ground, first, that the transfer was invalid, null, and void as to creditors, and, next, that in any event the transfer was insufficiently executed, so as to pass the title of the policy, and it still remains the

property of the estate of S. R. Cockfield, and should be administered as such, and applied to the payment of his creditors." The court below sustained the transfer of the policy and awarded the proceeds to the transferee, Dr. Cockfield, less so much as represents the premiums paid by the insured in his lifetime, which was directed to be turned over to his executors. The decree distributes the insurance money accordingly, and the creditor appeals.

We put aside, without expressing any opinion, the contention of appellant that the attempted change of beneficiary was ineffectual for any purpose, in order to decide the case upon the assumption that the letter written to the company by the insured a few days before his death effected a valid transfer of the policy and its proceeds, except as against the rights of creditors. The argument in behalf of appellee rests upon the proposition that, inasmuch as the policy by its terms had no cash surrender value, only two annual premiums having been paid, its transfer to the brother diverted nothing of value from the insured's estate, and this we apprehend is the crux of the case. Some support is sought by analogy in that section of the Bankruptcy Law which provides for the disposition of insurance on the life of a bankrupt, and under which it is held that a policy having no surrender value does not pass as an asset to the trustee. Burlingham v. Crouse, 228 U. S. 459, 33 Sup. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148. But this is not a bankruptcy proceeding, and it seems manifest that the statutory right of a trustee in such case cannot measure or affect the right of creditors in a suit like this to reach the proceeds of a policy on the ground that as to them it has been fraudulently transferred. The only law here applicable is the statute of Elizabeth, which upon this issue is the common law of South Carolina.

[1, 2] Granting, however, the principle invoked by the appellee, that a policy without surrender value may be validly transferred even as against creditors, we are not prepared to hold that the policy in question had no surrender value at the time of its transfer. If the insured had then been in his usual health, with the normal expectation of life, his estate would not have been depleted by a change of beneficiary, and creditors could not justly complain. In that case the transferee might have taken a burden, instead of a bounty, because of the probability that an indefinite number of premiums would have to be paid. But the situation here is altogether different. The insured knew that he was about to die; he had been told so by his brother. He therefore knew, or at least supposed, that presently, and long before another premium would be payable, the full amount of his policy, less the small note secured thereby, would come into the hands of his executors and be subject to the claims of creditors. The only reasonable inference is that in these circumstances he undertook to turn over to his brother, to whom it was a pure donation, the insurance money which otherwise would go to the payment of his debts. This being so, we think it cannot be said that the transferred policy was valueless. On the contrary, as it seems to us, the fact of impending death, the practical certainty that the life of the insured would end within a few days, operated to remove the element of con-

tingency, and gave to the policy at the time of its transfer an actual pecuniary value closely approximating its face amount. The terms of the policy relating to surrender value may be controlling, when the insured entertains the ordinary expectation of life; but they should not be permitted to shield a gratuitous transfer to the prejudice of creditors, when he knows that death is an early certainty. Nor can the transfer in question be defended on the ground of difference between conscious and constructive fraud, for it is familiar doctrine that every man must be presumed to intend the natural consequences of his acts. The insurance procured by Cockfield was by his direction made payable to his legal representatives, and it thereby became, whatever its value, an asset of his estate. When he sought to change the beneficiary, he knew that death was near, and that the proceeds of the policy, if not transferred, would soon be paid to his executors; and he was therefore chargeable with the results of his action, even if he lacked the intention of defrauding his creditors. In short, we are convinced that the transaction under review was fraudulent as to creditors and must be so adjudged.

And this conclusion is sustained, as we think, by the clear weight of authority. A case directly in point is Stokoe v. Cowan, 29 Bevan, 637. The facts are strikingly similar. Cowan had two policies upon his life, one taken out in April, 1857, the other in June, 1858, both payable to his estate. On November 9, 1859, he assigned them absolutely to his mother, to whom they had been previously pledged for a small amount. He died insolvent on the 3d of December following. Stokoe, a creditor at the time of the assignment, brought suit to set it aside. At the time of the transfer Cowan was ill with consumption, and it was known by those about him that he could live but a short time longer. The same defense was set up as here, that the policies were of little or no value; the assignee being liable to pay the premiums, and their value therefore depending entirely upon the amount of future payments. But the Master of the Rolls, in a brief but very explicit opinion, held that the assignment could not stand as against creditors, and gave the plaintiff a decree for the full amount of the policies, less the sum for which they were pledged, saying, among other things, that:

"The value of a policy does not depend so much on the number of payments made, as on the age of the insured and the state of his health at the time the assignment takes place."

To the same effect is another English case decided a few years later, Freeman v. Pope, L. R. 9 Eq. 206, which is cited with approval in Central Bank of Washington v. Hume, 128 U. S. 195, 9 Sup. Ct. 41, 32 L. Ed. 370. In the latter case the Supreme Court said (128 U. S. pages 204 and 207, 9 Sup. Ct. 44, 45 [32 L. Ed. 370]):

"In the view of the law, credit is extended in reliance upon the evidence of the ability of the debtor to pay, and in confidence that his possessions will not be diminished to the prejudice of those who trust him. This reliance is disappointed, and this confidence abused, if he divests himself of his property by giving it away after he has obtained credit. And where a person has taken out policies of insurance upon his life for the benefit of his estate, it has been frequently held that, as against creditors, his assignment, when insolvent, of

such policies, to or for the benefit of wife and children, or either, constitutes a fraudulent transfer of assets within the statute and this, even though the debtor may have had no deliberate intention of depriving his creditors of a fund to which they were entitled, because his act has in point of fact withdrawn such a fund from them, and dealt with it by way of bounty. Freeman v. Pope, L. R. 9 Eq. 206. * * * The rule stands upon precisely the same ground as any other disposition of his property by the debtor. The defect of the disposition is that it removes the property of the debtor out of the reach of his creditors. * * * The obvious distinction between the transfer of a policy taken out by a person upon his insurable interest in his own life, and payable to himself or his legal representatives, and the obtaining of a policy by a person upon the insurable interest of his wife and children, and payable to them, has been repeatedly recognized by the courts."

We regard these authorities as decisive of the instant case and further discussion appears unnecessary. It follows that the decree appealed from, so far as it awards any portion of the insurance money, to the appellee, must be reversed, and the cause remanded, with instructions to enter a decree in accordance with the views herein expressed.

Reversed.