## UNION CENTRAL LIFE INS. CO. et al. v. FLICKER et al.*
### No. 8943.

Circuit Court of Appeals, Ninth Circuit.
Feb. 20, 1939.

STEPHENS, Circuit Judge, dissenting.

A. L. Abrahams, of Los Angeles, Cal., for appellant.

William A. Monten, of Los Angeles, Cal., for appellees.

*Rehearing denied April 12, 1939.

858

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

In an interpleader suit filed by an insurer, funds deposited in the registry of the court which became due under a life insurance policy issued to Samuel Rabinovich were decreed to be a part of insured's estate, and the insured's widow has appealed.

On December 29, 1924, The Union Central Life Insurance Company, an Ohio corporation, hereinafter called the insurer, issued the policy in question in the amount of $50,000, numbered 827,108. On July 24, 1926, the insurer issued a second policy to the insured for $25,000, and on August 1, 1928 issued to the insured a third policy for $100,000. Appellant, the insured's wife, was named as the beneficiary in all the policies, but the insured reserved the right to change the beneficiary. At the time insured applied for and received all these policies, he was a resident of and domiciled in the State of New York.

In 1929, appellant and the insured moved to California. On June 8, 1930, the insured assigned absolutely the second policy for $25,000 to his brother, Frank Rabinovich, who was one of the principal shareholders of Ogus, Rabinovich & Ogus, Inc., a New York corporation.

On September 14, 1930, the insured changed the beneficiary in the policy in question, in the amount of $50,000 from appellant to his "estate" and on the following day assigned it "together with all rights reserved to me as the insured under the said policy, or as the owner thereof, or as the beneficiary thereunder * * * and all sum or sums of money, interest, benefit and advantage whatsoever, now due, or hereafter to become due to me by virtue thereof * * *" to Ogus, Rabinovich & Ogus, Inc., hereinafter called the assignee. A duplicate of the assignment was filed with the insurer, and the latter acknowledged receipt of the same to the assignee on September 27, 1930. The policy in question, at the time of the assignment, had no cash surrender value in excess of indebtedness which was a charge thereon.

The evidence conclusively showed that the assignment to the assignee was made pursuant to an agreement between it and the insured, whereby the assignee agreed to keep the policy in force by payment of premiums, and from any proceeds received, retain therefrom the amount of the indebtedness owing by insured to it, including the amount of premiums paid by it, with 6% interest, and pay the balance to appellant. It is not clear whether or not appellees question that such an agreement was made. However all the evidence was to that effect, and none was contrary, and therefore it need not be set out herein.

At the time the foregoing assignment was made there was also in force a fourth policy for $25,000 issued to insured by another insurer, in which appellant was designated as the beneficiary.

On December 19, 1931, appellant was adjudicated a bankrupt on her petition, and sometime during the summer of 1932, she obtained a discharge therein.

On August 16, 1936, the insured died. Continuously since the early part of 1928, the insured had been insolvent. The premiums on the policy in question since the date of the assignment thereof to the assignee had been paid by it.

The amounts due on the second and third policies were paid to the brother who sent $2,000 to appellant. The amount due on the fourth policy was paid to appellant.

Appellant petitioned a California state court to be appointed executrix of the insured's will, alleging in the petition: "That the character and estimated value of the property of said estate, and the probable annual income therefrom, so far as known to your petitioner are as follows: Insurance and Personal Effects, in excess of $10,000.-00." Letters testamentary were issued to appellant on October 14, 1936. Thereafter she claimed and received as such executrix a check from the insurer for $30,975.41, the amount due on the policy in question. Subsequently, upon advice of her attorney, she returned the check to the insurer, and on December 21, 1936, brought an action in her individual capacity against the insurer in a state court of California to recover the amount due on the policy in question.

On December 31, 1936, the bill of interpleader was filed by the insurer in the court below, alleging that appellant, individually and as executrix, and the assignee, all claimed the balance due on the policy in question, and that such claims were conflicting. The insurer deposited the balance due on the policy in the sum of $30,975.41 in the registry of the court, and prayed that appellant, individually and as executrix, and the assignee be required to interplead and litigate their claims.

On February 8, 1937, appellant as executrix, filed in the probate proceedings an inventory returning, as the only asset of the estate, the claim on the policy in question, which she stated was "not enforceable and valueless." She thereupon resigned as executrix. Letters of administration c.t.a. were issued to appellees on February 17, 1937, and in this suit they were substituted as a party defendant in the place of appellant as executrix.

The state court action was dismissed.

In the interpleader suit the assignee answered, alleging that the policy in question was assigned to it upon the condition that upon insured's death it would pay the amount received on the policy, after deducting the amount of the indebtedness owing it by the insured to appellant, and that by reason thereof appellant was the owner of, and entitled to receive, the amount deposited in the registry of the court. Appellant filed an answer to the same effect.

Appellees alleged that four claims against the estate of the insured had been approved by them and the probate court, totaling $10,964.66, all of which had been reduced to judgment; that appellant originally was liable on one of the claims which had been reduced to judgment, but that no judgment had been obtained against her because of the bankruptcy discharge; that the net annual premiums on all four insurance policies were $5,100 which "was an unreasonable large sum to pay for insurance by" the insured and that "the payment thereof was in fraud of his creditors"; that the "total sum of $200,000.00 * * * was an unreasonable and excessive protection to" appellant; that payment of premiums on the policies was made while the insured was insolvent; and that appellant knew the amount of insurance carried was unreasonable and excessive, and that the premiums were paid in fraud of the insured's creditors.

Appellees further alleged that the policy in question was assigned to the assignee upon the understanding that the balance, after payment of the indebtedness owing the assignee by the insured, would be paid to the insured's estate; that the other three policies were assigned to the insured's brother upon a secret agreement that the proceeds thereon, less indebtedness owing the brother by the insured, would by the brother, be paid to appellant and her two children, and by reason thereof the latter "have been more than amply and fully and reasonably protected".

The opinion of the court below discloses consideration of two questions only: (1) did the assignment of the policy in question "work a change of beneficiary"? and (2) was the assignment made to the assignee "as trustee for the wife"? In its opinion the trial court answered both questions in the negative. The court found the facts substantially as related above, there being no conflict in the evidence. It found and concluded that the assignment did not effect a change of beneficiary from the "estate" to appellant, did not assign any portion of the proceeds of the policy to appellant, and further concluded that such assignment did not constitute the assignee a trustee for appellant of any such proceeds. Decree was entered in favor of the appellees, and appellant brought this appeal.

Both parties concede that the law of California prevails and rely on Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290, and we will consider the case on that theory. Cf. 79 A.L.R. 809 annotation.

As hereinbefore stated, it is clear that the insured assigned the policy in question to the assignee pursuant to an agreement, that the assignee would pay the premiums thereafter falling due, and from the proceeds received from the policy, deduct the amount of the insured's indebtedness owing it, and deliver the balance to appellant. We think such an agreement would be enforced by the California courts (Legrande v. Legrande, 178 S.C. 230, 182 S.E. 432, 102 A.L.R. 582, annotation; Cal. Civ. Code § 1559; Cal. Ins. Code § 10130, St.1935, p. 638; cf. Silvey v. Hodgdon, 52 Cal. 363), probably on the theory that the assignee held the balance of the proceeds as a trustee for the benefit of appellant. 14 Cal. Jur. 536, § 89. Appellee's argument that since the assignment was made for security, the assignee may retain only an amount sufficient to pay the indebtedness and must deliver the balance to the beneficiary named in the policy, is not pertinent, because the insured and the assignee made a different agreement.

Appellant is therefore entitled to the proceeds of the policy in question (Cal. Ins. Code § 10172, St.1935, p. 639; 6 Couch, Cyc. Ins. Law, 5256, § 1458u; 8 Id. 6426, § 1933), unless the transfer by the insured to the assignee, insofar as it was for the

benefit of appellant, was a fraudulent conveyance.

It is provided in Cal. Civ. Code § 3439: "Every transfer of property or charge thereon made, * * * with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor, and their successors in interest, and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

In Cal. Civ. Code § 3442, it is provided that " * * * the question of fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration * * *."

Under these statutes, the intent of the debtor to delay or defraud his creditors must be shown (12 Cal. Jur. 984, § 27), regardless of whether the conveyance is made with or without consideration. 12 Cal. Jur. 985, § 27. Such an intent on the part of the grantee need be shown only if the conveyance is made for a valuable consideration. Id. However, where the debtor, while insolvent, makes a voluntary conveyance—one without a valuable consideration (Security Trust Co. v. Silverman, 210 Cal. 578, 292 P. 636)—a fraudulent intent is conclusively presumed (12 Cal. Jur. 1019, § 60) in accordance with Cal. Civ. Code § 3442, which provides in part, that " * * * any transfer or encumbrance of property made or given voluntarily, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, shall be fraudulent, and void as to existing creditors."

With regard to the question as to whether or not a life insurance policy may be subject to the rules regarding fraudulent conveyances, we are not here concerned with rules regarding a debtor insuring his life for the benefit of his wife and children in the first instance. Although the insured originally procured a policy for such purpose, the beneficiary therein was changed to his estate.

The situation usually appearing in connection with fraudulent transfers is a change, by the insured, of the beneficiary, from his estate to a third person. In California such a change may constitute a fraudulent conveyance. Bryson v. Manhart, 11 Cal.App.2d 691, 54 P.2d 778. Generally, see annotations: 6 A.L.R. 1173; 106 A.L.R. 596. Inasmuch as an assignment of a policy presents a stronger case as a transfer, we think it undoubtedly would be held in California that such an assignment might be a fraudulent conveyance.

Inasmuch as there is no evidence of actual intent to defraud on the part of the insured or the assignee, appellant contends that the decree below was erroneous, because the assignment was made in consideration of pre-existing indebtedness owing the assignee by the insured. The effect of the assignment, we believe, whether it is considered as a simple contract for the benefit of appellant or as creating a dry trust, was to transfer a part of the proceeds to the assignee, and the remainder thereof to appellant. We may assume that the assignment insofar as the assignee was concerned was supported by a valuable consideration, but insofar as appellant is concerned the assignment was purely voluntary. The fact that the transfer to appellant was indirect rather than direct, we believe to be immaterial, because it is substance, not form, which controls. We conclude that the transfer to appellant was fraudulent, because made to her without a valuable consideration while the insured was insolvent.

While the transfer was fraudulent, it does not follow that it may be set aside. Cal. Civ. Code, § 3441, provides: "A creditor can avoid the act or obligation of his debtor for fraud only where the fraud obstructs the enforcement, by legal process, of his right to take the property affected by the transfer or obligation."

As explanatory of that principle, it is said in 12 Cal. Jur. 976, § 18: "However much a conveyance may be tainted with fraud, no creditor may set it aside, unless some specific property out of which he has the right to satisfy his claims is, by the fraudulent conveyance, withdrawn from his reach. The intent to delay or defraud creditors is not enough; there must also be a resulting injury to the creditor, which must be affirmatively shown. * * *"

Appellant contends that since the policy in question had no cash surrender value, the creditors lost nothing, and were, therefore, not injured.[1]

---

[1] Cal. Code Civ. Proc. §§ 690.19, 690.20 specify exemptions with respect to "All moneys, benefits, privileges * * * accruing or in any manner growing out of

■ In determining whether or not the creditors were injured by the transfer, it must be determined whether the insured transferred something which the creditors could have subjected to their claims. The cases are in conflict as to whether or not the proceeds of policies may be reached by the creditors. (Compare: annotations; 6 A.L.R. 1173; 106 A.L.R. 596.) One rule is that a policy of life insurance confers valuable property rights which, in the absence of transfer, would go to insured's estate, and therefore the proceeds inure to the benefit of the creditors, the fact as to whether or not there is a cash surrender value being given no consideration. Upholding this rule, expressly or by implication, are eight states,[2] including Alabama,[3] Massachusetts,[4] Mississippi,[5] New Jersey,[6] New York,[7] North Carolina,[8] Pennsylvania,[9] and Tennessee.[10]

On the other hand, another rule is that since the only thing transferred in fraud of creditors is the cash surrender value, (excluding the question as to whether premiums paid in fraud of creditors may be recovered), there is no right in the creditors to reach the proceeds of the policy, but only the cash surrender value, if any. Supporting such rule are eight states,[11] including Arkansas,[12] Connecticut,[13] Indiana,[14] Kentucky,[15] Michigan,[16] Virginia,[17] West Virginia,[18] and Wisconsin,[19] and dicta in Navassa Guano Co. v. Cockfield, 4 Cir., 253 F. 883, 6 A.L.R. 1168. A seeming exception to that rule is that where the transfer is made when the insured is about to die, then actually there is transferred more than the cash surrender value. In such instance, it has been held that the claim upon death is more than a contingency, and the creditors are permitted to reach the proceeds of the policy.[20]

Bryson v. Manhart, 11 Cal.App.2d 691, 54 P.2d 778, greatly relied on by appellees, is a case of that character. Here there is nothing to show that the insured was in the shadow of impending death. Appellant relies on North British & Mercantile Ins. Co. v. Ingalls, 109 Cal.App. 147, 292 P. 678, but that was a case where an insured's wife was originally named beneficiary in the policy and continued as such until the insured's death, and the

any life insurance". 12 Cal.Jur. 340, § 7. There is here no contention that the policy could not be fraudulently conveyed because exempt from attachment and execution to the extent specified in the statute. See 12 Cal.Jur. 961, § 9. The question presented is narrowed to a general proposition, independently of the exemption statutes.

[2] See also: 25 Am.L.Rev. 185; 18 Va. L.Rev. 95, 40 W.Va.L.Q. 383.

[3] Friedman v. Fennell, 94 Ala. 570, 10 So. 649; Pope v. Carter, 210 Ala. 533, 98 So. 726; Love v. First Nat. Bank of Birmingham, 228 Ala. 258, 153 So. 189.

[4] McCarthy v. Griffin, Mass., 12 N.E. 2d 836.

[5] Catchings v. Manlove, 39 Miss. 655.

[6] Travelers' Ins. Co. v. Grant, 54 N.J. Eq. 208, 33 A. 1060.

[7] Continental Nat. Bank v. Moore, 83 App.Div. 419, 82 N.Y.S. 302; Gould v. Fleitmann, 188 App.Div. 759, 176 N.Y.S. 631, affirmed 230 N.Y. 569, 130 N.E. 897; Stoudt v. Guaranty Trust Co. of New York, 150 Misc. 675, 271 N.Y.S. 409.

[8] Burton v. Farinholt, 86 N.C. 260.

[9] Appeal of Elliott's Executors, 50 Pa. 75, 88 Am.Dec. 525; McCutcheon's Appeal, 99 Pa. 133; In re McKown's Estate, 198 Pa. 96, 47 A. 1111; Fidelity Trust Co. v. Union Nat. Bank of Pittsburgh, 313 Pa. 467, 169 A. 209, certiorari denied 291 U.S. 680, 54 S.Ct. 530, 78 L.Ed. 1068.

[10] Walter v. Hartman, Tenn., 67 S.W. 476.

[11] See, also, 33 Mich.L.Rev. 1108.

[12] Davis v. Cramer, 133 Ark. 224, 202 S.W. 239.

[13] Barbour v. Connecticut Mutual Life Ins. Co., 61 Conn. 240, 23 A. 154.

[14] Johnson v. Alexander, 125 Ind. 575, 25 N.E. 706, 9 L.R.A. 660; State v. Tomlinson, 16 Ind.App. 662, 45 N.E. 1116, 59 Am.St.Rep. 335.

[15] Planters' State Bank v. Willingham's Assignee, 111 Ky. 64, 63 S.W. 12.

[16] Equitable Life Assur. Soc. of United States v. Hitchcock, 270 Mich. 72, 258 N.W. 214, 106 A.L.R. 591, overruling Ionia County Sav. Bank v. McLean, 84 Mich. 625, 48 N.W. 159.

[17] White v. Pacific Mut. Life Ins. Co., 150 Va. 849, 143 S.E. 340; Coalter v. Willard, 156 Va. 79, 158 S.E. 724.

[18] Mahood v. Maynard, 114 W.Va. 385, 171 S.E. 884.

[19] First Wisconsin Nat. Bank of Milwaukee v. Roehling, 224 Wis. 316, 269 N.W. 677, 272 N.W. 664.

[20] Navassa Guano Co. v. Cockfield, 4 Cir., 253 F. 883, 6 A.L.R. 1168; La Borde v. Farmers' State Bank, 116 Neb. 33, 215 N.W. 559. Compare: Equitable Life Assur. Soc. of United States v. Hitchcock, 270 Mich. 72, 258 N.W. 214, 106 A.L.R. 591.

question presented was whether transfer of the proceeds caused by the death of the insured, was a conveyance in fraud of creditors. In such cases, a different rule is applicable, and is based on Central Nat. Bank of Washington v. Hume, 128 U.S. 195, 9 S.Ct. 41, 32 L.Ed. 370. See annotations: 31 A.L.R. 51; 34 A.L.R. 838. Thus neither case relied on indicates which rule would be applied by the California courts.

■ When the assignment was made, how were any creditors injured, or in other words, what did the insured put out of reach of his creditors? A policy, admittedly confers certain rights and privileges on the insured. One of them, i. e., the cash surrender value, is capable of reduction to money. The others cannot, we think, be said to have a value, because a creditor can obtain the same rights by procuring a policy himself. Reason indicates that a creditor would not pay for such rights, when he can obtain them for nothing by procuring a new policy. In either case the premiums must be paid by the creditor. While it is true that the creditor might be willing to pay a small sum for the policy here, in order to keep the insurance in force by payment of a lesser premium than would be required in a new policy, the question as to whether the rights, other than the cash surrender value, are personal only to the insured, make such rights of doubtful value. In fact the rule seems to be that unless the insured has exercised the option to obtain the cash surrender value, there is nothing upon which a creditor may levy. See annotations: 16 L.R.A.,N.S., 317; 44 A.L. R. 1188; 57 A.L.R. 695. Assuming, without deciding here, that the California courts would hold the cash surrender value subject to execution, that rule does not compel a holding that the insured's creditors were injured, because here the policy had no cash surrender value. Therefore, we hold that the creditors were not injured by the transfer, and cannot now complain.

Reversed.

STEPHENS, Circuit Judge (dissenting).

I dissent. It seems to me that the trial court's inferences from the testimony were fairly drawn and that the conclusions reached should not be disturbed by us. The trial court decided that no agreement existed between Ogus, Rabinovich & Ogus, Inc. and the insured beyond the assignment of the policy involved as security for advances. The beneficiary of the policy was insured's estate and the creditors of that estate should be paid out of the insurance money.