# Richmond.

## HENRY U. COALTER v. JOHN T. WILLARD, SERGEANT, ADM'R.

March 19, 1931.

Present, Prentis, C. J., and Epes, Hudgins, Gregory, and Browning, JJ.

The opinion states the case.

*Smith & Gordon,* for the appellant.

*Willis C. Pulliam* and *J. M. Turner,* for the appellee.

BROWNING, J., delivered the opinion of the court.

This case is here upon an appeal from a decree of the trial court entered on the 8th day of August, 1929, which sustained the demurrer of Mary R. Knowles to the bill of complaint against herself and others filed by Henry U. Coalter, the appellant.

From the allegations of the bill the following facts are shown: The appellant, Coalter, was a plumber and tinner, and W. M. Knowles, formerly the husband of Mary R. Knowles, was a contractor with whom the said Coalter transacted business for some years before the death of said Knowles on April 15, 1927, at which time Knowles owed the said Coalter $2,007.51 and accrued interest. The said Knowles had on his life insurance to the extent of $20,000.00, represented by two policies for $10,000.00 each. These policies were payable to the estate of the said Knowles, and they constituted all of the

insurance he had so payable. He had other life insurance payable to his wife, the said Mary R. Knowles, which is not in question here.

On April 6, 1927, at which time the said Knowles was insolvent, he caused by writings signed by him to the Life Insurance Company of Virginia, which company had issued the said two policies, the said two life insurance policies to be made payable to his wife instead of to his estate, and transferred them to her.

The bill charges that this was done by Knowles with the actual intent to hinder, delay and defraud the appellant and the other creditors of Knowles in the enforcement of their claims against him or against his estate; that on April 15, 1927, said Knowles committed suicide and thus matured the said policies in favor of his wife, and on April 18, 1927, she collected the proceeds of the policies amounting to $19,176.43, and has refused to pay any part of same to the estate of her said husband or to the appellant; and that the transfer of said policies by Knowles to his wife and her receipt of the proceeds of the same were all parts of a general intent on the part of both of them to hinder, delay and defraud appellant and the other creditors of the said Knowles; that from time to time in which the said Knowles was becoming indebted to the said Coalter and was being extended credit by him, the said Knowles told him that he had insurance on his life payable to his estate, which was ample and sufficient to pay all of his debts in the event of his death, and a few days before he died, when appellant brought up the question of the continuance of said credit, Knowles stated that he had this $20,000.00 of life insurance for the protection of his creditors, and upon faith of this statement appellant continued his credits to him.

There are other allegations in the bill which we do not deem necessary to here set forth, those above referred to being sufficient for the purposes of determining the issues in this case.

Upon the demurrer to the said bill and exhibits therewith filed, the trial court, on August 8, 1929, decreed as follows:

"Upon consideration of all of which, and it appearing to the court that there is no allegation in the complainant's bill that the insurance policies mentioned in said bill had any cash value at the time the insured changed the beneficiary therein, nor that the insured, William M. Knowles, deceased, was insolvent at the time he made payment of any of the premiums on the said insurance policies, the court, therefore, is of the opinion that the mere change of the beneficiaries in said policies, which had no cash value, transferred no subject or thing to the injury of the complainant, or of any of the creditors of the said William M. Knowles, deceased, and that inasmuch as the complainant creditor before he could be entitled to relief herein must have been deprived of something of value and which was taken from his reach by the said William M. Knowles, the court doth, therefore, sustain the demurrer of the said Mary R. Knowles to the complainant's bill, and doth adjudge, order and decree that the said bill be dismissed, and that the complainant, Henry U. Coalter, do pay the costs of this suit."

It will be observed that the decree correctly states that there were no allegations in the appellant's bill that at the time the insured changed the beneficiary in said policies they possessed any cash surrender value or that any premiums on the said policies were paid by the said Knowles after he had become insolvent.

The appellant submits one assignment of error which is in these words:

"Petitioner assigns as error that, in sustaining the demurrer of said Mary R. Knowles to his bill, the trial court failed to give effect to the true intent and effect of section 5184 of the Code of Virginia, and of the decisions bearing on the matter at issue, which required that the demurrer be overruled."

Thus it is at once seen that we have before us for decision

a question of law and one which, we think, has already been definitely settled by this court.

Authority for this statement is found in three cases, decided at widely different periods of time, but each sustaining the other and reaching the conclusion from which there can be, now, no escape, unless we are to disregard our own judicial pronouncements and adopt those of other jurisdictions. The cases referred to are: *Stigler's Ex'x* v. *Stigler,* 77 Va. 163; *Boisseau* v. *Bass,* 100 Va. 207, 40 S. E. 647, 57 L. R. A. 380, 93 Am. St. Rep. 956; *White* v. *Pacific Mutual Life Ins. Co.,* 150 Va. 849, 143 S. E. 340.

From these cases it is clear that in Virginia a life insurance policy before it has matured, and which has no cash surrender value, is not property in contemplation of sections 5184 and 5185 of the Code.

A quotation from the latest of the three cases cited, viz., *White* v. *Pacific Mutual Life Ins. Co., supra,* makes it plain that the three cases are pertinent and applicable to the present case and their enunciations constitute the law in Virginia regardless of what it may be in other jurisdictions. McLemore, J., in the above case, after quoting from Lile's Notes on Equity Jurisprudence, said, at page 862:

*"Stigler's Ex'x* v. *Stigler,* 77 Va. 163, is authority for the proposition stated by Mr. Lile. Lewis, P., speaking for the court, says:

" 'In this case each of the policies was intended as a gift to accrue to the beneficiaries therein named. When the premiums on them were paid, the insured was indebted. The obvious intent of the statute is to invalidate as against existing claims of creditors every gift or voluntary assignment of the debtor's property, without regard to its object or the form in which it is made. It is plain, therefore, that to the extent the means of the insured were withdrawn from creditors and applied to the payment of premiums on the policies in question, the payments were void as against creditors, and that

they were entitled to have the sums so paid applied to the discharge of their claims out of. the proceeds of the policies.'

"From these authorities the conclusion is irresistible that creditors in the instant case have no rights as respects the proceeds from the policy beyond the premiums withdrawn from decedent's estate in his lifetime (and after he became insolvent) in order to purchase the insurance. Beyond this, decedent has done his creditors no wrong, and his assets have not been diverted to their hurt. His estate must pay back the premiums, if at all, because when he paid the premiums he was using his creditors' money; money which they had the right to demand should be paid on their debts. As to the difference between the premiums paid after insolvency and the face of the policy he was gambling for the benefit of his family with the probabilities of death, and whatever the result, creditors have no just grounds of complaint.

"While the *cash surrender value* of a policy of insurance may be reached by creditors and applied by proper process to the payment of obligations, where it has been assigned in contravention of section 5185 of the Code, other than this, the interest of the assured cannot ordinarily be subjected, the reasons for which are well stated in *Boisseau* v. *Bass,* 100 Va. 207 (syllabus), 40 S. E. 647, 57 L. R. A. 380, 93 Am. St. Rep. 956:

" 'The interest of an assured in a policy on his life which has no present market value, but is dependent for its continued existence on voluntary payments to be made in the future by the assured, is not such an interest or estate as can be reached by a *fieri facias.* It is immaterial that the assured, in a given contingency, is allowed to surrender his policy and take in lieu thereof a paid-up policy for a different amount. This would involve the making of a new contract, and, ordinarily a creditor can only subject the interest of his debtor in existing contracts. A debt which has a present existence, although payable in the future, may be subjected to the lien of

a *fieri facias,* but not a debt which rests upon a contingency which may or may not happen and over which the court has no control.' *Combs* v. *Hunt,* 140 Va. 627, 125 S. E. 661, 37 A. L. R. 621; *Fentress* v. *Rutledge,* 140 Va. 685, 125 S. E. 668."

It follows that it is our opinion that the decree of the trial court correctly states the law of the case, and it is affirmed.

*Affirmed.*