First Wisconsin National Bank of Milwaukee, Appellant, vs. Roehling and others, Respondents.

*October 13, 1936—April 7, 1937.*

For the appellant there were briefs by *Corrigan, Backus, Sullivan & Backus,* and oral argument by *F. H. Parsons* and *Walter D. Corrigan, Sr.,* all of Milwaukee.

For the respondents there were briefs by *James T. Guy,* guardian *ad litem* for Patricia M. Roehling, *Malcolm K. Whyte,* executor of the estate of Herman Roehling, *Lecher, Michael, Whyte & Spohn,* attorneys for Louise Y. Roehling, and *William E. Jones,* attorney for the Northwestern Mutual Life Insurance Company, all of Milwaukee, and oral argument by *Mr. Whyte.*

A brief *amici curiæ* (on motion for rehearing) was also filed by *Bagley, Spohn, Ross & Stevens* of Madison, attorneys for the First National Bank of Madison, and *Edward J. Dempsey* of Oshkosh, attorney for the First National Bank of Oshkosh.

The following opinion was filed November 10, 1936:

WICKHEM, J.   The insured, Herman Roehling, committed suicide on December 11, 1931. For some years prior to his death he had carried four policies of insurance issued

by the defendant insurance company aggregating $70,000 in face amount. Three policies aggregating $50,000 were originally payable to Roehling's estate, but on September 29, 1931, Roehling executed a change of beneficiary substituting his wife, defendant Louise Roehling, as beneficiary, with Patricia Roehling as contingent beneficiary. These policies had always been listed in Roehling's financial statements to plaintiff bank as assets to the extent of the $8,000 cash surrender value. In such statements, however, he listed as liabilities notes payable to the Northwestern Mutual Life Insurance Company, $8,000, and referred to the policies as $70,000 face value of life insurance pledged as collateral. Thus, the statement of assets indicates that these policies were held as security for a loan which completely exhausted the cash surrender value. In these statements Roehling agreed to notify the bank promptly of any change materially reducing the pecuniary responsibility.

The facts with respect to the property of Roehling are substantially these: He had by inheritance a substantial fortune, which was invested for the most part either directly or through his company, the R-H Realty Company, in real-estate equities. He was obligated either directly or as a guarantor on a number of mortgages on these properties. Commencing in 1930, these mortgages began to go into default, and the defaults continued until the time of his death, the estate ultimately losing nearly all of the property through foreclosure sales or voluntary conveyances to mortgagees. In other words, as was so frequently the case as the depression progressed, Roehling's equities were gradually shrinking and ultimately to all intents and purposes, disappeared. On October 8, 1931, plaintiff bank had a conference with Roehling, and among other things demanded an assignment of all his policies for their protection upon the loan here involved, his collateral having shrunk in value. Roehling declined to make this assignment, and did not notify the bank that nine days

previous to this time he had changed the beneficiary under these policies from the estate to Louise Roehling and his daughter. The bank deferred action upon Roehling's engagement to secure a guarantor of the note in the person of his mother upon her return from Europe. On December 11th, Roehling committed suicide.

Plaintiff's action is based upon the contentions: (1) That Roehling was insolvent at the time of the change of beneficiary, rendering applicable sec. 242.04, Stats., which reads as follows:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

(2) That the change was made with actual intent to hinder, delay, or defraud creditors and void under the terms of sec. 242.07, Stats., which reads as follows:

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors."

(3) That the change of beneficiary in a life insurance policy, irrespective of the existence of a cash surrender value at the time of change, is a conveyance within the meaning of the Uniform Fraudulent Conveyance Act and a fraudulent conveyance if made while the insured is insolvent or with actual intent to delay, hinder, or defraud creditors.

Sec. 242.01 (2), Stats., defines conveyance as follows:

" 'Conveyance' includes every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance."

Upon demurrer, the trial court held that a change of beneficiary was a conveyance as defined by sec. 242.01 (2), Stats., and capable of being fraudulent. Upon the trial the court found, (1) that Roehling was not insolvent at the time the change of beneficiary was made; and (2) that the change was not made with actual intent to defraud creditors. Plaintiff claims that these findings are against the great weight and clear preponderance of the evidence, and that the ruling upon demurrer is not reviewable in the absence of a motion to review.

If this appeal were to turn upon the assignments of error here made, it would fail. The evidence was in conflict as to the values properly to be assigned to the various items of property, and the evidence admitted of the findings made by the trial court as to solvency. The same comment is applicable to the finding that Roehling had no actual intent to defraud creditors. However, we do not deem it necessary or profitable to labor these points because we consider that, except as to such cash surrender value as a policy of life insurance may have at the time of a change in beneficiary, the change does not constitute a conveyance capable of being fraudulent. Such a change is not literally within the definition of conveyance contained in sec. 242.01 (2), Stats., nor is it a conveyance as that term is generally understood in the law. It is merely the appointment of a person to take property which arises only upon the death of the insured. It does not, standing alone, involve or include an assignment of the policy itself. Whatever the interest affected by the change, it puts out of reach of the creditors no property that could at the time of the transfer be reached by them. Since a mere change of beneficiary is not within the letter of sec. 242.01 (2) nor within the definition of conveyance as generally held, and since only the cash surrender value of the policy is presently available to creditors or reachable by them, we consider

that such a change can only be within the act if and to the extent that a cash surrender value exists and is transferred. That there is a conflict in the cases on this subject is conceded. The cases are collected, and the conflict noted, in 6 A. L. R. 1173.

Not being concluded by any authority in this state, we are free to determine the matter upon principle, and we consider that the following statement by the Michigan court in *Equitable Life Assur. Society v. Hitchcock*, 270 Mich. 72, 258 N. W. 214, 216, sets out the sound principle:

"Although it is true that a policy is property, it is only so in a limited sense. It is clearly distinguishable from a promissory note payable at some future date. Outside of the cash surrender value, if there be any, an insurance policy represents a mere expectancy dependent upon the performance of certain conditions and the happening of a certain contingency. We therefore believe that until the death of the insured nothing except the cash surrender value of an insurance policy, the actual value of what was transferred, is property within the meaning of the statute declaring fraudulent conveyances and assignments void, and that the proper rule is to limit creditors to a recovery of the cash surrender value of the policy at the time of the transfer."

To the same effect, see also *Coulter v. Willard*, 156 Va. 79, 158 S. E. 724; *Davis v. Cramer*, 133 Ark. 224, 202 S. W. 239.

In connection with this, it may be profitable to give some consideration to secs. 246.09 and 272.18, Stats. Sec. 246.09 provides in substance that any person, whether her husband or not, effecting insurance on his own life may cause the same to be made payable or assign the policy to a married woman, and every such policy shall be the sole separate property of such married woman, and the proceeds of such insurance shall be payable to her free from the claims of creditors of the insured. It is further provided that,—

"the amount of any premiums for said insurance paid with intent to defraud creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy."

Sec. 272.18, Stats., deals with property exempt from execution. It provides in sub. (19) that,—

"if a policy of insurance, whether heretofore or hereafter issued, is effected by any person on his own life or on another life, in favor of a person other than himself, or, *except in cases of transfer with intent to defraud creditors,* if a policy of life insurance is assigned or in any way made payable to any such person, the lawful beneficiary or assignee thereof, . . . shall be entitled to its proceeds and avails against the creditors and representatives of the insured . . . provided, that subject to the statute of limitations, the amount of any premiums for said insurance paid with intent to defraud creditors, . . . shall inure to their benefit from the proceeds of the policy."

These sections contain identical provisions to the effect that,—

"the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless before such payment the company shall have written notice, by or in behalf of a creditor, of a claim to recover for transfer made or premiums paid with intent to defraud creditors, with specifications of the amount claimed."

It is the argument of plaintiff that the portion of sec. 272.18 (19), Stats., italicized indicates a statutory purpose to make assignments and changes of beneficiary the subject of fraudulent transfers. We cannot assent to such a contention. Sec. 272.18 (19) is not definitive of fraudulent conveyance, and no inference is to be drawn from this statute that a mere change of beneficiary upon a policy having no cash surrender value is a transfer capable of being fraudulent. It is as we hold capable of being fraudulent to the extent that its cash surrender value is transferred, and under sec. 272.18 (19), if the change of beneficiary operates to put out of the reach of the creditors the cash surrender value of the policy under such circumstances as to constitute a fraudulent transfer, the section is operative only as to this transfer and its proceeds. There is no such exception in sec. 246.09,

dealing with policies made payable or assigned to a married woman, although as heretofore stated, it is provided that an insurance company that pays a policy in accordance with its terms is discharged in absence of written notice of a claim to recover "for transfer made" or premiums paid with intent to defraud creditors. It might be argued with nearly equal force that the absence of such a proviso as is contained in sec. 272.18 (19) would make impossible as a fraud to creditors a change designating a married woman as beneficiary even though the policy had a cash surrender value. Neither contention is sound for the reason that neither statute assumes to define fraudulent conveyances.

However, sec. 246.09, Stats., does throw light upon the present problem. In this case Roehling had no obligation to his creditors to keep in force the policies in question. They could not complain if he ceased paying premiums and permitted the policies to lapse. Had he done so, their only claim would have been to such cash surrender value as the policies had at that time. In this case there would be no claim because the cash surrender value was entirely hypothecated. Having permitted the policy to lapse, Roehling could have taken out an equal amount of life insurance payable to his wife and child, and under sec. 246.09 she would have taken the full proceeds unless it could be established that the payments of premiums or some portion of them constituted fraudulent conveyances, in which case the creditors would be limited in their recovery to the amount of such premiums. The Uniform Fraudulent Conveyance Act evidences no intent to protect the creditors against the loss by transfer of an interest so speculative, so remote, and so completely within the power of the insured to destroy, and the fact that the statutes permit the acquisition of insurance by a husband for the benefit of his wife free and clear from the claims of his creditors is further evidence of an intent that, aside from premiums and cash surrender value, neither the taking of life insurance payable to a married woman, nor its assignment to

her, nor a change of beneficiary to make the policy payable to her, constitutes a fraudulent conveyance.

The contention that in the absence of a motion to review, the matter discussed is not here for decision, is unsound. While the ruling of the court upon demurrer may not be here in the absence of a motion to review, the question whether, under the facts as proven and the applicable rules of law as we find them to exist, plaintiff is entitled to recover, is necessarily present upon any appeal from a judgment. This is not affected by the fact that the trial court found for defendants upon the facts after a ruling upon the law favorable to plaintiff. Defendants may support the judgment by relying on legal principles which wholly preclude a recovery, even though their contentions in respect to them were rejected by the trial court on demurrer. *Armstrong v. Gibson*, 31 Wis. 61; *Van De Yacht v. Holland*, 217 Wis. 455, 259 N. W. 604.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. (*dissenting*). It is doubtful whether Roehling was solvent when he changed the beneficiaries of the policies. The evidence is quite conclusive that he knew he could not pay his debts and that his fortune was gone or was held to him by a slender thread. His fading hope of a favorable turn was fixing the date of his self-destruction. There is, however, evidence upon values of certain property in which he had an interest tending to show that a balance between liabilities and assets was on the side of solvency. The trial court so found and that finding must stand.

The other important finding is contrary to the great weight and clear preponderance of the evidence. The facts show that he intended to deprive his creditors of a recourse to property which had been his and which, if left as it had been, would afford them means of satisfying their claims. That he intended to hinder and prevent the appellant from recovering money it had lent him is indicated plainly by his every move from the time he received a letter from the bank

on September 21, 1931, up to the change in the designation of beneficiaries, and his subsequent acts speak just as strongly of his purpose to keep the appellant from recovering on his obligations to it. If the finding that Roehling had no actual intent to hinder creditors becomes of consequence in a determination of this case, it must be set aside as not sustained by the evidence.

The ruling that the change of payment from the estate to Mrs. Roehling is not literally within the definition of conveyance contained in sec. 242.01 (2), Stats., or conveyance as that term is generally understood in the law is not in accordance with my understanding of the law. It is my opinion that the law now is, and was generally understood to be, that a life insurance policy payable to an estate is property and that a change of beneficiary is to be treated, under such circumstances as here exist, as an act of transfer or conveyance. Business practices are consistent with this idea. If the rule advanced by the majority is a statement of the law, then, for his safety, the lender will be obliged to follow a practice of requiring an assignment to himself of a policy. A man of good reputation, having $50,000 of life insurance payable to his estate, who desires to borrow $1,000 or more or less, would under such a practice be expected to assign his policy whenever he was obliged to borrow money, even for a short time. The confusion would increase as the number of people with whom he dealt increased. Good faith and fairness in ordinary dealing ought to protect the borrower, the creditor, and the insurance company from the burden and embarrassment of such a rule.

Some states by statute or common practice are committed to the rule now proposed to be followed. In the cases I have been able to review, I find none which entirely excludes such policies as we have here from the category of property. In a case which seems to me to have had considerable, but undeserved weight with the majority, *Equitable Life Assur. Soci-*

*ety v. Hitchcock,* 270 Mich. 72, 258 N. W. 214, 216, it is said, as quoted in the majority opinion :

"Although it is true that a policy is property, it is only so in a limited sense"—

and it is added :

"It is clearly distinguishable from a promissory note payable at some future date."

Most rights in property are subject to some limitation, and different instruments creating, defining, and evidencing rights have characters peculiar to themselves. An option on a valuable piece of real estate differs from a negotiable instrument too. It may also be said to be property in a limited sense. Until it is exercised, it is dependent upon performance of certain conditions and the happening of certain contingencies. The owner of the option may give it up. Still he has property there, and a loan made with the understanding that the right under the option is beneficial to the borrower's estate puts in the creditor a right to find his relief in that resource when the debtor assigns the option and then commits suicide for the purpose of hindering and delaying the creditor and benefiting someone for whom he prefers to provide.

Earlier the supreme court of that state, in *Ionia County Sav. Bank v. McLean,* 84 Mich. 625, 48 N. W. 159, 160, said :

"A life insurance policy being property, it follows that its assignment must be governed by the same rule as that of other property."

The opinion in that case, after noting that the debtor did not originally insure his life for the sole benefit of his wife and daughter, continues :

"He insured it for the benefit of his estate, in which his creditors were to be interested. The argument is not sound that, because he could insure his life under this statute for

the benefit of his wife and daughter, therefore he can assign a policy which was not taken out for their sole benefit, and thus place it beyond the reach of creditors."

The courts of many states with statutes not differing materially from ours have recognized the rule as just set forth by the reference to *Ionia County Sav. Bank v. McLean, supra;* see also 6 A. L. R. 1176.

It seems to me that the rule to be gathered from the best reasoned cases is that one extending credit to another on the basis of character and property, and influenced in making the loan by disclosures in a statement of assets and liabilities in which is included a policy of life insurance payable to the borrower's estate, is entitled to have the substance of the estate remain as disclosed, undiminished by a wilfully fraudulent act, conveying away the policies. The insurance contracts payable to the estate were property. They had the attributes of property. They gave a financial standing to one so situated that enabled him to say to a proposed creditor, "If I live, my faculties and opportunities to earn are such that I can and will pay; if I die, my estate will consist of avails of the insurance policies and will be subject to obligations left unsatisfied at my death." I will refer to but two of the many cases to be found in 6 A. L. R. 1176, supporting this proposition. In *Continental Nat. Bank v. Moore,* 83 App. Div. 419, 82 N. Y. Supp. 302, it appeared that one Mason, having embezzled a large sum of money from his employers which he could not repay, transferred to his wife and daughter certain policies of insurance on his life, originally payable to his estate, and a few days thereafter, committed suicide. It was held that the assignment was void as against creditors. The second case is *Gould v. Fleitmann,* 230 N. Y. 569, 130 N. E. 897, affirming 188 App. Div. 759, 176 N. Y. Supp. 631. One Heinze, an insolvent debtor, assigned to his sister four policies of insurance payable to his estate. It was held that the creditors of Heinze might set aside these transfers as fraudulent, regardless of the fact

that the policies had no cash value at the time of the change of beneficiary. In the annotation, 6 A. L. R. 1178, it is said:

"The ruling fact in the case was the fact that the transfer was made to put the proceeds of the policies out of the reach of creditors. Moreover, it was said, the policies were valuable contracts, constituted property, and were subject to the rules governing the transfer of property."

No rule exists by which we can divide the contract into paid-up value and contingent value. A policy is a complete contract. In the sense of property, it must be treated as an entity, and cannot be carried away by a dishonest act, nor can any part of it be separated from the other.

It is suggested that the law favors the protection of dependents by way of insurance. It certainly does, but it is rather strange to associate in the same class and to put upon the same basis a fraudulent act, such as changing the beneficiary so as to defraud creditors, and the perfectly legal and proper act of taking out insurance to provide for one's dependents. Insurance secured for the benefit of wife and children is one contract. Insurance for the benefit of the estate to protect creditors is another. Each seeks to meet obligations which the law expects an honest man to fulfil. There must be fault enough in a plan or method that permits the extension of the protection to one group to be made at the expense of and by defrauding the other to destroy it.

I do not believe the question is an open one in this state, but even though it is, this court should follow such cases as have been referred to, holding such a transfer invalid, for the rule of those cases is consistent with good morals and has been followed in the general practice in business circles.

I am authorized to state that Mr. Justice MARTIN concurs in this dissent.

The following opinion was filed April 7, 1937:

WICKHEM, J. (*on motion for rehearing*). In its brief upon motion for rehearing, plaintiff calls attention to the

fact that this court was in error in stating that the cash surrender value of the policy in question was fully hypothecated. The trial court found, and the fact is, that the surrender value exceeded the loan for which it was security by $1,656. Hence, the statement in the opinion that the case is fully disposed of by the rule that a change of beneficiary could only constitute a fraudulent conveyance to the extent of the cash surrender value of the policy is withdrawn. A complete restudy of the record, however, satisfies us that the findings of the trial court, (a) that insured was not insolvent at the time of the change of beneficiary or rendered so by it, and (b) that there was no actual intent on his part to defraud creditors, are not against the great weight or clear preponderance of the evidence.

We are strongly urged by plaintiff to reconsider and repudiate the rule of law announced in the opinion which limits the scope of fraudulent conveyances upon a change of beneficiary by the insured to the cash surrender value of the policy at the time of the change. It is urged, (a) that "conveyance" as the term is defined in the act is broad enough to include every manner of transferring property, and (b) that an insurance policy, being a chose in action, does constitute property. In substance, it was held in the opinion that a change of beneficiary is not literally within the definition of "conveyance," and that an insurance policy, while in a sense constituting property, merely represents "an expectancy dependent upon the performance of conditions and the happening of contingencies." It was pointed out that there was nothing aside from the cash surrender value which the creditors could reach at the time of the change, and that the operation of the Fraudulent Conveyance Act should be limited to property that was at the time of the alleged fraudulent conveyance within the reach of the creditors.

After careful reconsideration of the whole question, we adhere to our determination. It has always been the rule in

this state that a conveyance of property which is exempt cannot be deemed fraudulent as against creditors. *Bond v. Seymour,* 1 Chand. 40, 2 Pin. 105; *Bank of Commerce v. Fowler,* 93 Wis. 241, 67 N. W. 423; *Shawano County Bank v. Koeppen,* 78 Wis. 533, 47 N. W. 723; *Rozek v. Redzinski,* 87 Wis. 525, 58 N. W. 262; *Hibben v. Soyer,* 33 Wis. 319; *Pike v. Miles,* 23 Wis. 164; *Goodell v. Blumer,* 41 Wis. 436. The reason for this is that the exempt property was not within the reach of the creditors at the time of the act challenged and consequently was not put beyond their reach by it. *Dreutzer v. Bell,* 11 Wis. *114; *Pike v. Miles, supra.* It seems to us that the same principle applies here. Except for the cash surrender value, no part of the insurance policy could be reached by the creditors at the time of the change or during the lifetime of the insured. It is our conclusion that the rule as announced in *Equitable Life Assur. Society v. Hitchcock,* 270 Mich. 72, 258 N. W. 214, is sound. For other cases, to the same effect, see note, 106 A. L. R. 599.

The brief of plaintiff and that of *amici curiæ* express concern as to the effect of this doctrine upon the credit structure of the state. It is pointed out that financial statements required of borrowers by banks call for the disclosures of insurance policies and their beneficiaries; that where the beneficiary is stated to be the estate of the borrower, that is a factor entitled to be considered by the bank as favorable to the loan; that if the rule announced is adhered to, it will be necessary to secure an assignment or at least to discount the favorable aspects of the debtor's showing with respect to his insurance. We cannot regard such considerations as effective to change the rules of law announced. Further than this, even in cases where a loan is fully covered by collateral, all such factors as income, exempt property, life insurance, etc., bear principally upon the personal and business character of the borrower and the consequent likelihood that the loan will be repaid. Considered in this light, they are un-

332

affected by the decision. To consider them in any other would create a species of security where none had been asked for by the lender or consciously given by the borrower.

*By the Court.*—Motion for rehearing denied with $25 costs.