# Richmond

ALPHONSE CUSTODIS CHIMNEY CONSTRUCTION COMPANY AND
UNITED STATES FIDELITY AND GUARANTY COMPANY V.
JUAN CRUZ MOLINA.

January 15, 1945.

Record No. 2892.

Present, Campbell, C. J., and Holt, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*George B. White* and *S. L. Creath*, for the appellants.

*Louis S. Herrink* and *Albert W. Richman*, for the appellee.

EGGLESTON, J., delivered the opinion of the court.

On August 3, 1942, Juan F. Cruz, an employee of Alphonse Custodis Chimney Construction Company, was killed at Hampton, Virginia, as the result of an accident which arose out of and in the course of his employment. A claim for partial dependency was filed with the Industrial Commission by Juan Cruz Molina, the father of the decedent, who was at the time of the accident a resident and citizen of Puerto Rico, where he was born in 1896, and where, except

for a period of several months in 1918, he has continuously resided.

Section 39 of the Workmen's Compensation Act[1] (Michie's Code of 1942, sec. 1887(39) ) provides: "If the employee does not leave dependent, citizens of and residing at the time of the accident in the United States or Dominion of Canada, the amount of compensation shall not in any case exceed one thousand dollars."

After a hearing the Industrial Commission found that at the time of the accident the claimant was a citizen of and resided "in the United States" within the meaning of this section, and made an award on the ground of partial dependency in excess of $1,000.

The employer and insurance carrier, who prosecute this appeal, admit that at the time of the accident the claimant, by reason of an act of Congress to which we will later refer, was a citizen of the United States, but they contend that he was not then "residing * * * in the United States" within the meaning of section 39 of the Workmen's Compensation Act. Hence, they say, the award to him should not have been in excess of $1,000.[2]

Code, sec. 5, provides: *"Rules of Construction.*—In the construction of this Code, and of all statutes, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature:

"First, 'State,' 'United States.'—The word 'State,' when applied to a part of the United States, shall be construed to extend to and include the District of Columbia and the several territories so-called, and the words 'United States' shall be construed to include the said district and territories; * * * ."

■ While this statutory definition antedates the enact-

---

[1] Acts 1918, ch. 400, p. 637, as amended by Acts 1920, ch. 176, p. 256; Acts 1922, ch. 427, p. 745; Acts 1924, ch. 318, p. 478; Acts 1926, ch. 7, p. 7; Acts 1930, ch. 54, p. 57; Acts 1938, ch. 249, p. 386; Acts 1942, ch. 66, p. 61.

[2] While the workmen's compensation statutes of several of the States contain similar provisions, a diligent search reveals no reported case on the precise question here involved.

ment of the Workmen's Compensation Act, it in terms applies to "all statutes." Moreover, it is a familiar rule of statutory construction that subsequent legislation is enacted in light and with knowledge of such interpretive statutes, and hence the latter control unless there be a clear legislative intent to substitute a different interpretation. Sutherland on Statutory Construction, 3d Ed., Vol. 2, sec. 3003, pp. 224, 225.

Therefore, if Puerto Rico is one of the "territories" referred to in Code, sec. 5, it is a part of the "United States" as defined by that section, and its citizens and residents are citizens and residents of the United States within the meaning of section 39 of the Workmen's Compensation Act.

The island of Puerto Rico (then called Porto Rico) was ceded to the United States by Spain by the Treaty of December 10, 1898 (30 Stat. 1754), which terminated the Spanish-American War. By Act of April 12, 1900, ch. 191 (31 Stat. 77; U. S. Comp. Stats., sec. 3747 ff.), and by the later Act of March 2, 1917, ch. 145 (39 Stat. 951; 48 U. S. C. A., sec. 731 ff.), Congress set up for the island a government "similar to that of the States and Territories." *Gromer* v. *Standard Dredging Co.*, 224 U. S. 362, 370, 32 S. Ct. 499, 56 L. Ed. 801. It has a governor appointed by the President and confirmed by the Senate of the United States, and various executive departments; a Senate and House of Representatives elected by the people; and a Supreme Court whose members are appointed by the President and confirmed by the Senate of the United States. There is a "Resident Commissioner to the United States," elected by popular vote, who represents the island in the United States House of Representatives, with a voice, but no vote therein. The island has a United States District Court and is in the First Judicial Circuit.

Under section 5 of the Act of March 2, 1917 (39 Stat. 953; 8 U. S. C. A., sec. 5), "All citizens of Puerto Rico, * * * are declared, and shall be deemed and held to be, citizens of the United States; * * * ."

The status of Puerto Rico and the applicability thereto of

certain provisions of the Constitution and statutes of the United States have been before the Supreme Court in a number of cases.

In *De Lima* v. *Bidwell*, 182 U. S. 1, 21 S. Ct. 743, 45 L. Ed. 1041 (decided in 1901), it was held that with the ratification of the Treaty of Peace between the United States and Spain, the island ceased to be a "foreign country" within the meaning of the tariff laws of the United States.

In *Downes* v. *Bidwell*, 182 U. S. 244, 21 S. Ct. 770, 45 L. Ed. 1088 (likewise decided in 1901), it was held that the island was not a part of the United States within Article I, sec. 8, of the Constitution requiring duties, imposts and excises to be uniform "throughout the United States." In the latter case, in a concurring opinion written by Mr. Justice White, and in which two of the other Justices joined, the view was advanced that while the island was territory "belonging to the United States," it had not been "incorporated into" the Union.

In *Balzac* v. *People of Porto Rico*, 258 U. S. 298, 304, 305, 42 S. Ct. 343, 66 L. Ed. 627 (decided in 1922), the view advanced by Mr. Justice White was adopted as the unanimous view[3] of the members of the court. In this case it was held that since the island was territory, "belonging to the United States," but not incorporated into the Union, the provisions of the Sixth and Seventh Amendments to the Federal Constitution, securing the right of trial by jury, did not apply to judicial proceedings therein.

In the later case of *People of Puerto Rico* v. *Shell Co.*, 302 U. S. 253, 257, 58 S. Ct. 167, 169, 82 L. Ed. 235, while the court adhered to the view that Puerto Rico was territory which had not been incorporated into the Union, it was held that it was a "territory of the United States" within the meaning of section 3 of the Sherman Anti-Trust Act (15 U. S. C. A., sec. 3). In reaching that conclusion the court

---

[3] For an interesting recital of the various steps by which the Supreme Court arrived at this view, see "The Evolution of the Doctrine of Territorial Incorporation," 26 Columbia Law Review, p. 823, by Frederick R. Coudert, a distinguished member of the New York Bar.

quoted with approval (302 U. S., at page 258) its former holding in *Kopel v. Bingham*, 211 U. S. 468, 476, 29 S. Ct. 190, 53 L. Ed. 286, "that Porto Rico is a completely organized territory, although not a territory incorporated into the United States, * * * ."

In *Kopel v. Bingham, supra*, it was held that Puerto Rico was a territory within the meaning of section 5278 of the Revised Statutes (18 U. S. C. A., sec. 662), which provides for the demand and surrender of fugitive criminals by the governor of "any State or Territory." There it was also held (211 U. S., at pages 474, 475) that the island came within this definition of a territory: "A portion of the country not included within the limits of any State, and not yet admitted as a State into the Union, but organized under the laws of Congress with a separate legislature, under a territorial governor and other officers appointed by the President and Senate of the United States." This holding was approved in *People of Puerto Rico v. Shell Co., supra* (302 U. S., at pages 258, 259).

■ While the Supreme Court has distinguished between a "territory" which has been incorporated into the United States and one which merely belongs thereto, there is no indication that the word is used in a restricted sense in section 5 of the Code of Virginia. Indeed, the reference in that section to "the several territories *so-called*" would indicate that the word is not to be given a limited or technical meaning. According to Webster's New International Dictionary, "so-called" means, "Commonly named; thus termed; — implying doubt as to the correctness or propriety of so designating the person or thing."

■ In our opinion, since Puerto Rico is "a completely organized territory," whose citizens are citizens of the United States, it is one of the "territories" referred to as being embraced within the words "United States," as defined in Code, sec. 5.

It, therefore, follows that the Industrial Commission was correct in the view that the claimant was a citizen and resi-

dent of the "United States" within the meaning of section 39 of the Workmen's Compensation Act.

The award complained of provides that, "In addition to the award of dependency, the defendant will pay the burial expenses as well as all court costs." It is assigned as error that the award failed to limit the amount of the "burial expenses" to $150.

Section 39 of the Workmen's Compensation Act provides that in addition to benefits paid dependents, the employer shall pay, or cause to be paid, "burial expenses not exceeding one hundred and fifty dollars."

From the scant treatment of this assignment of error in both briefs, we take it that the point at issue is whether the cost of transporting the decedent's body to the place of interment is a part of the "burial expenses" which by the statute are limited to $150. In our opinion it is. In 21 Am. Jur., sec. 334, p. 571, the author says: "The cost of transporting the body from the place of death to the place of burial is ordinarily regarded as an essential part of the funeral expense."

Moreover, there is nothing in the statute to indicate that the employer shall be liable for the cost of such transportation if it be not included as a part of the "burial expenses."

Accordingly, the award should be modified to limit the amount of burial expenses, including the cost of transportation, to the amount fixed in the statute. With this modification the award is affirmed. The appellee, having substantially prevailed on this appeal, will recover his costs.

*Modified and affirmed.*