## Richmond

### CITY OF RICHMOND, ET AL.

### V.

### ROBERT H. LEVI, ET AL.

Record No. 810825.

January 20, 1984.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, Thomas, JJ., and Harrison, Retired Justice.

*William H. Hefty, City Attorney (James R. Saul, Assistant City Attorney; Jim L. Chin, Assistant City Attorney,* on briefs), for appellants.

*Mahlon G. Funk, Jr. (Everette G. Allen, Jr.; Keith D. Boyette; Hirschler, Fleischer, Weinberg, Cox & Allen,* on brief), for appellees.

THOMAS, J., delivered the opinion of the Court.

This appeal requires us to construe language contained in the 1969 Annexation Decree involving the City of Richmond and Chesterfield County. Suit was brought by property owners in the annexed area whose property had been provided dumpster trash collection service by the City, from the effective date of the annexation through 1977, when that service was discontinued by the City.[1] In the trial court, the complainants argued that paragraph 7(2) of the 1969 Annexation Decree gave residents of the annexed area a vested right, in perpetuity, to the same type and level of services provided to residents in pre-annexation Richmond as of

---

[1] The discontinuance of dumpster trash collection did not, however, mean the discontinuance of all trash collection in the annexed area. Instead, the City switched to the use of trash cans. The appellees contend that their properties are not suited for this type of trash collection.

January 1, 1970, the effective date of the decree. The trial court ruled in favor of complainants, ordered the City to reestablish dumpster trash collection services in the annexed area, and ordered the City to reimburse complainants for all sums spent by them in securing private dumpster trash collection services. We think the trial court's reading of paragraph 7(2) was erroneous. Therefore, we will reverse the judgment entered below.

The pertinent language of the Annexation Decree reads as follows:

> The Court further directs the City of Richmond to furnish to the area annexed all other City services *now* furnished the citizens of the City of Richmond in accordance with standards maintained under like conditions throughout the City.

(Emphasis added.) Appellees place a great deal of emphasis upon the word "now." They contend the word "now" must be read to mean "at the present time" and that when that phrase is read into the foregoing provision it becomes clear, in the words of the property owners, that

> [t]he annexation order required and continues to require the City to supply to the annexed area the services furnished the pre-annexation City as of the date of entry of the order and the effective date of annexation at the same level as those services were then offered.

The central fallacy in the property owners' position is that they read the phrase "level of services" into paragraph 7(2). But that phrase is nowhere to be found, even if the word "now" is given the meaning they suggest.

Moreover, when all the words in paragraph 7(2) are given their usual meaning and no words are unduly emphasized to the exclusion of others, a more natural common-sense reading of the paragraph becomes apparent. It means, as the City suggests, that as of the effective date of the annexation decree the City was required to provide citizens in the annexed area with the same *type* services provided in the pre-annexation City. This means, for example, that if police services were being provided in the pre-annexation City they would likewise have to be provided in the annexed area. The same would be true for fire protection or trash collection. In our view, the clearly discernable intent of the paragraph is to pre-

vent the City from treating the annexed area in an inferior manner. The provision is to ensure uniformity and to prevent discrimination. It is not, in our view, designed to lock in, in perpetuity, in the annexed area, the type or level of services existing in the pre-annexation City as of January 1, 1970.

In addition to reading more into paragraph 7(2) than can be found there, the property owners make the mistake of ignoring the last 10 words of that paragraph. That phrase reads as follows: "in accordance with standards maintained under like conditions throughout the City." This language confirms that the overall purpose of paragraph 7(2) is to ensure that people similarly situated throughout the City are treated similarly. This language would prevent the City from concentrating police resources in a high crime area in the pre-annexation City while ignoring the police needs of a high crime area· in the annexed area.

Yet another reason that we find the property owners' construction unconvincing is that it leads to absurd results. If the annexed area has a permanent right to the type and level of services existing in pre-annexation Richmond as of January 1, 1970, then what happens in the remainder of the City? If, for example, budgetary constraints led to layoffs of service personnel, can it reasonably be argued that the annexation area is immune from any reductions in personnel below those employed by the pre-annexation City on January 1, 1970? And does this mean that any and all cuts would have to be made in the pre-annexation City while the annexed area remained untouched? The answer to these questions must be no. Otherwise, instead of creating a unified City, the annexation decree would serve to divide the City into two distinct groups: one forever immune from change and the other the "whipping boy" on every occasion a reduction in services was required. Such an outcome is contrary to paragraph 7(2).

The property owners argue strenuously that unless paragraph 7(2) is read to create vested rights, in perpetuity, it is mere surplusage. They contend that if paragraph 7(2) is simply an antidiscrimination provision then it provides no more protection to citizens in the annexed area than is already provided by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. This argument is intriguing, but it is wrong. It would have merit only if paragraph 7(2) and the Equal Protection Clause were co-extensive. They are not. The Equal Protection Clause is not a pure antidiscrimination provision. In the absence

of the existence of a suspect category or the involvement of a fundamental right, the Equal Protection Clause permits differential treatment of citizens so long as a rational basis exists for creating the difference. *Exxon Corp.* v. *Eagerton,* 462 U.S. 176 (1983), *Hodel* v. *Indiana,* 452 U.S. 314, 331 (1981).

Thus, in the absence of paragraph 7(2), if the City of Richmond chose to treat citizens in the annexed area differently from citizens in the pre-annexation City, it only need establish a rational basis for so doing. Yet, on the other hand, the rational basis concept does not apply to the operation of paragraph 7(2). Pursuant on that paragraph, the City is required to provide similar services to citizens existing "under like conditions" in either part of the City regardless of whether there exists a rational basis for differentiating between them.

The facts of this case make plain that in eliminating dumpster trash collection services and in instituting collection of trash through use of trash cans, the City has treated the annexed area in the same manner that it has treated the pre-annexation City; it is not required to do more.

*Reversed and final judgment.*