## CIRCUIT COURT OF ARLINGTON COUNTY

Nimia T. Felix-Aranibar

v.

Luis Enrique Felix

August 12, 2002

Case No. (Fiduciary) W26889

BY JUDGE WILLIAM T. NEWMAN, JR.

This case presents the question of whether the proceeds of a decedent's life insurance policy are to be included in the decedent's augmented estate under Virginia Code § 64.1-16.1. Petitioner asserts that based upon the plain language of the statute, the proceeds of this policy must be included once the decedent's spouse claims her elective share. Respondent counters that (1) the proceeds of the policy are exempt from this claim based upon Virginia Code § 38.2-3339, which protects proceeds of group life insurance policies; (2) life insurance policies are not "property" within the context of the augmented estate statute; (3) the life insurance policy is a contract, and including it within the elective share impairs the contract in violation of both the United States and Virginia Constitutions; and (4) even if life insurance policies fall within the ambit of the augmented estate statute, this particular policy does not qualify because it was not transferred prior to the marriage. For the reasons set forth below, the Court holds that the proceeds of this group life insurance policy should be included in the augmented estate of the deceased and therefore awards partial summary judgment to the Petitioner.

*Facts*

Jose Angel Felix-Torres ("Decedent"), a resident of Arlington County, died intestate on August 10, 2001. Nimia T. Felix-Aranibar ("Petitioner"), the decedent's surviving spouse, qualified as the Administrator of the intestate estate on August 24, 2001. The Petitioner and Decedent were married on January 12, 2000. There were two children born to Petitioner and Decedent, Joanelly Kendra Felix, born June 17, 1999, and Natalie Jasmine Felix, born June 8, 2001, both of whom survived the Decedent. Decedent also had another child from a previous relationship, Luis Enrique Felix ("Respondent"), who was born on September 5, 1992.

At the time of his death, Decedent had tangible personal property valued at approximately $4000. The only other asset Decedent owned was a $30,000 group life insurance policy obtained through his employer, D. A. Foster Industries, Inc., and issued by GE Financial Assurance, Employer Services Group. The death benefit of the group life insurance policy was payable to Respondent. This policy became effective on September 1, 1997. Although the policy provided the Decedent the opportunity to change the beneficiary designation, the Decedent never chose to do so.

*Procedural History*

Pursuant to Virginia Code § 64.1-13, Petitioner claimed an elective share of Decedent's augmented estate. Additionally, Petitioner seeks to include the proceeds of the insurance policy as part of Decedent's augmented estate pursuant to Virginia Code § 64.1-16.1. Respondent countered by filing a Motion for Partial Summary Judgment presently before the Court. Because there are no material issues of fact in dispute and because no evidence could affect the result, summary judgment is appropriate for disposition of this precise issue. See *Shevel's, Inc.-Chesterfield v. Southeastern Associates, Inc.,* 228 Va. 175, 181, 320 S.E.2d 339 (1984).

*Discussion*

This case presents two questions. The first question the Court must address is whether a group life insurance policy is "property" within the context of the augmented estate statute. If it is "property," only then must the Court decide whether this particular policy falls within the ambit of the augmented estate statute.

I. Whether the proceeds of a group life insurance policy fall within the ambit of Virginia Code § 64.1-16.1 appears to be an issue of first impression. In Virginia, courts construe statutes for the sole purpose of giving effect to the expressed intentions of the legislature. See *Chesterfield County v. Stigall*, 262 Va. 697, 704, 554 S.E.2d 49 (2001). Consequently, the Court must assume "that the legislature chose, with care, the words it used in enacting the statute." *Barr v. Town & Country Properties*, 240 Va. 292, 295, 396 S.E.2d 672 (1990). To this end, we must turn to the language of the statute itself, and "if a statute is clear and unambiguous, a court will give the statute its plain meaning." *Loudoun County Dept. of Social Services v. Etzold*, 245 Va. 80, 84, 425 S.E.2d 800 (1993); see also *Virginia Empl. Comm'n v. Davenport*, 29 Va. App. 26, 29, 509 S.E.2d 522 (1999) (noting that "our task is to apply the statute as it is written, gleaning from its terms the legislative intent").

Additionally, individual phrases of a single provision must not be construed in isolation. *Stigall*, 262 Va. at 697. Rather, "[a] cardinal rule of statutory construction is that a statute be construed from its four corners and not by singling out a particular word or phrase." *Commonwealth Natural Resources, Inc. v. Commonwealth*, 219 Va. 529, 536, 248 S.E.2d 791 (1978). Moreover, this same rule governs if two provisions within the Code appear to be in conflict. "The doctrine of pari materia teaches that statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great, connected homogenous system, or a simple and completed statutory arrangement." *Commonwealth v. Wallace*, 29 Va. App. 228, 233, 511 S.E.2d 423-24 (1999) (quoting *Moreno v. Moreno*, 24 Va. App. 190, 197, 480 S.E.2d 792 (1997)) (internal quotations omitted).[1] At bottom, "proper construction seeks to harmonize the provisions of the statute both internally, and in relation to other statutes." *Mayhew v. Commonwealth*, 20 Va. App. 484, 489, 458 S.E.2d 305 (1995) (citations omitted).

With these bedrock rules of statutory construction in mind, the Court must look to the plain meaning of § 64.1-16.1 to determine whether life insurance proceeds falls within its purview. Section A states in part that, "the augmented estate means the estate passing by testate or intestate succession, real and personal. . . ." Va. Code § 64.1-16.1(A). Further, the phrase "the

---

[1] However, it also important to recognize that "it is a familiar rule of statutory construction that subsequent legislation is enacted in light of and with the knowledge of such interpretive statutes, and hence the latter controls unless there be a clear legislative intent to substitute a different interpretation." *Alphonse Custodis Chimney Constr. Co. v. Molina*, 183 Va. 512, 515, 32 S.E.2d 726 (1945) (citations omitted).

value of property" appears continually throughout each subsection of this statute. See generally Va. Code § 64.1-16.1(A)(1), (2), (3). Therefore, to answer the question presented, we must determine whether life insurance proceeds are included within the "estate" and "property." This question is resolved in subsection D, which declares that:

> As used in this section, the terms "estate" and "property" shall include *insurance policies*, retirement benefits exclusive of federal social security benefits, annuities, pension plans, deferred compensation arrangements, and employee benefit plans to the extent owned by, vested in, or subject to the control of the decedent on the date of his death or the date of an irrevocable transfer by him during his lifetime.

Va. Code § 64.1-16.1(D) (emphasis added).

Accordingly, as Petitioner has urged, adopting the plain meaning commands this Court to rule that life insurance policies are in fact "property." However, Respondent proffers several counter-arguments to this conclusion. First, and most forcefully, Respondent argues that the language of Virginia Code § 38.2-3339 bars this reading of the statute. Section 38.2-3339, which address group life insurance policies, states:

> "No group life insurance policy, nor its proceeds, shall be liable to attachment, garnishment, or other process, or to be seized, taken appropriated, or applied by any legal or equitable process or operation of law, to pay any debt or liability of any person insured under the policy, *or his beneficiary*, or any other person who has a right under the policy, either before or after payment. If the proceeds of a group life insurance policy are not made payable to a named beneficiary, the proceeds shall not constitute a part of the insured person's estate for the payment of his debts.

Va. Code § 38.2-3339 (emphasis added).

Despite Respondent's assertions, § 38.2-3339 does not contradict the plain meaning of § 64.1-16.1. Section 38.2-3339 addresses "attachment, garnishment, or other process. . . ." Consequently, "the purpose of such group insurance policies and the intent of the law governing such policies . . . are to protect the dependents of the insured." *John Hancock Mutual Life Ins. Co. v. Sykes*, 106 F. Supp. 116 (E.D. Va. 1952) (construing Virginia law). Including

group insurance policies within the augmented estate statute in no way frustrates this purpose.[2] The augmented estate statute, which repealed Virginia's dower and curtesy laws in 1990, serves dual purposes. First, it provides greater protection for the wife against disinheritance. See Michelle ReDavid Rack, "The Doctrine of Charitable Immunity: Alive and Well in Virginia," 24 *U. Rich. L. Rev.* 513, 521 (1990) (noting that Uniform Probate Code, from which § 16.1-64 is based, "intended to prevent the decedent from defeating the surviving spouse's election rights through last-minute transfers from his probate estate") (citations omitted)). Second, the augmented estate statute "prevents a spouse who already has received ample provision from disrupting the decedent's estate plan by claiming more." *Id.* at 519. In reality, the augmented estate statute is merely a vehicle for calculating the surviving spouse's share of the decedent's "augmented" estate. It provides no vehicle for enforcement or collection. In contrast, the group beneficiary statute, deals exclusively with issues of enforcement and collection, as it protects the proceeds distributed to the beneficiary from garnishment, attachment, and other process. As a result, these two statutes, although potentially in friction in certain circumstances, are not necessarily incompatible.[3]

---

[2] Like group insurance policies, pensions are also protected from "execution, attachment, garnishment, or any process. . . ." Va. Code § 51.1-802. Moreover, Virginia courts have consistently held that pensions are in fact property. See *Holmes v. Holmes*, 7 Va. App. 472, 478, 375 S.E.2d 387 (1988); *Sawyer v. Sawyer*, 1 Va. App. 75, 78, 335 S.E.2d 277 (1985) (holding that "pensions do not have the normal attributes of assets as such but they are property rights"). Yet, contrary to Respondent's position, pensions are also included within the definitions of "estate" and "property" found in § 64.1-16.1(D). Consequently, the similar treatment that pensions and life insurance policies receive in both the sections of the Code belies Respondent's contention that these two provisions are in direct conflict.

[3] Moreover, it is Virginia Code § 64.1-16.2, not § 64.1-16.1, that provides for satisfaction of the surviving spouse's statutory share of the augmented estate. Virginia Code § 64.1-16.2(E) mandates that if a person liable for contribution to the surviving spouse fails to submit a written statement specifying a method for satisfying contribution and interest liability in accordance with subsections (E)(1) to (3), within thirty days, "the court shall enter an order specifying the method by which liability to the surviving spouse shall be satisfied." Va. Code § 64.1-16.2(E). Whether this provision, which authorizes contribution, is in direct conflict with the prohibition against "attachment, garnishment, or other process" provided in § 38.2-3339, raises a difficult issue. However, as that issue is not presently before the Court, it must remain an open question.

Next, Respondent argues that § 64.1-16.1 addresses and includes within its purview life insurance "policies," but not life insurance "proceeds." Respondent further argues that insurance policies, having no cash value, are not "property" within the meaning of the Virginia Code. See Brief for Respondent at 7 (citing *Coalter v. Willard*, 156 Va. 79, 158 S.E. 724 (1931)). This argument is without merit. *Coalter*, as well as the other cases cited in Respondent's brief, including *Stigler's Ex'x v. Stigler*, 77 Va. 163 (1883); *Boisseau v. Bass' Adm'r*, 100 Va. 207, 40 S.E. 647 (1902); and *White v. Pacific Mutual Life Ins. Co.*, 150 Va. 849, 143 S.E. 340 (1928), all addressed whether an unmatured life insurance policy, with no cash surrender value, was "property" in relation to other Code provisions, unrelated to the issue currently before the Court. Further, this Court must assume that the General Assembly was aware of these cases, all decided before 1930, when it enacted the augmented estate statute in 1990. See *Tumlin v. Goodyear Tire & Rubber Co.*, 18 Va. App. 375, 382, 444 S.E.2d 22 (1994). Nevertheless, the General Assembly declared that in the context of augmenting estates, life insurance policies are indeed property. Hence, "the latter controls unless there be clear legislative intent to substitute a different interpretation." *Commonwealth ex rel. Gagne v. Chamberlain*, 31 Va. App. 533, 538, 525 S.E.2d 19. This Court, having concluded that the plain language of the statute is clear and unambiguous, can look no further without invading the province of the legislative branch. *Davenport*, 29 Va. App. at 29-30 (recognizing that "if application of the statute produces questionable results in particular cases, that is a matter of legislative, not judicial concern").

Moreover, Respondent's distinction between insurance policies and proceeds, in this context, would lead to an absurd result. See *City of Richmond v. Levi*, 226 Va. 625, 311 S.E.2d 114 (1984) (finding a party's position unconvincing because it would lead to absurd results). First, the plain language of the statute draws no distinction between policies with a cash surrender value and one without. Second, to exclude policies with no cash value would serve only to frustrate the legislative intent. Again, one of the chief purposes of the augmented estate statute was to protect the surviving spouse from non-probate transfers designed to defeat the spouse's inheritance rights. Respondent's position creates a loophole large enough to eviscerate the entire scheme. And third, Respondent fails to account for the fact that the augmented estate statute refers to "property" owned by the decedent "on the date of his death." Va. Code § 64.1-16.1(D). It is true, as Respondent has argued, that prior to the death of the insured, the beneficiary has only an

expectancy in the proceeds. Yet, the issue of what constitutes property in relation to the augmented estate statute is immaterial at this juncture, as the statute is only triggered upon the death of the insured. On the other hand, upon the death of the insured, the moment at which the augmented estate statute is triggered, the insurance contract is executed, the policy has a cash value, and the named beneficiary's expectancy vests. See *Bickers v. Shenandoah Valley Nat. Bank of Winchester*, 197 Va. 145, 152, 88 S.E.2d 889 (1955); see also Brief for Respondent at 10 (conceding that "after the death of the insured, this interest vests and the proceeds become the property of the beneficiary"). Therefore, Respondent's distinction misses the mark and cannot overcome the plain language of § 64.1-16.1(D).

Respondent, in his third and final argument on this issue, asserts that interpreting § 64.1-16.1 in a manner that includes group life insurance policies as property, violates the "contracts clause" of both the United States and Virginia Constitutions. See U.S. Const. art. I, § 10; Va. Const. art. I, § 11; see also *Broaddus v. Broaddus*, 144 Va. 727, 732, 130 S.E. 794 (1925). Along with the Supreme Court, we must recognize that "all actions of the General Assembly are presumed to be constitutional." *Hess v. Snyder Hunt Corp.*, 240 Va. 49, 52, 392 S.E.2d 817 (1990). Therefore, this statute must be "construed in such a manner as to avoid a constitutional question wherever this is possible." *Virginia Society for Human Life, Inc. v. Caldwell*, 256 Va. 151, 157, 500 S.E.2d 814 (1990) (quoting *Eaton v. Davis*, 176 Va. 330, 339, 10 S.E.2d 893 (1940)). With this principle of statutory construction in mind, Respondent asserts that the Court's reading of the augmented estate statute violates the contracts clauses of the Federal Constitution and the Virginia Bill of Rights, which forbid the General Assembly from passing "any law impairing the obligation of contracts." *Waterman's Assoc. v. Seafood, Inc.*, 227 Va. 101, 109, 314 S.E.2d 159 (1984) (quoting Va. Const. art. I, § 11). Despite Respondent's contention otherwise, the Court's construction of § 64.1-16.1 in no way violates the aforementioned prescription against the impairment of contracts.

The insurance arrangement before the Court involves several separate contracts. There is a contract between the insurance company, GE Financial Assurance, and the employer, D. A. Foster Industries, to provide D. A. Foster's employees with group life insurance. There is also a contract between D. A. Foster and its employees (decedent) for employment and for the furnishing of group life insurance. Along with this contract, the employer provided the decedent with a certificate, on which he was to provide the name

of the intended beneficiary of the policy. The decedent was provided with such a certificate, which he successfully completed and returned to his employer in 1997, naming the Respondent as beneficiary. In the case at bar, each of these contractual relationships were honored by the parties involved. See *Bickers*, 197 Va. at 152 (stating that the "contracts between the insured and insurers are fulfilled upon payment by the companies of the proceeds of the policies to the named beneficiary"). Moreover, the augmented estate statute in no way implicates any of these relationships. Rather, § 64.1-16.1 implicates only the relationship between the insured and the beneficiary.

Still, Respondent maintains that the augmented estate statute impairs a contract that existed between the decedent and the named beneficiary. This assertion fails for two reasons. First, there was no contractual relationship between the insured and the beneficiary. The Supreme Court has held that the named beneficiary is not a party to a contract, but instead, receives a gift from the insured. *Walker v. Penick's Ex'or*, 122 Va. 664, 673, 95 S.E. 428 (1918). Moreover, assuming *arguendo* that a contract did exist between the insured and the beneficiary, this contract was in no way impaired. Whether or not the policy is included within the augmented estate statute for calculation purposes, the policy proceeds must be paid, in full, to the beneficiary. Again, the resulting question, whether the beneficiary is liable for contribution under § 64.1-16.2, is a question not presently before the Court. In conclusion, the plain meaning of § 64.1-16.1(D) mandates the inclusion of group life insurance policies within the definitions of "estate" and "property" found within the statute.

II. Because Virginia Code § 64.1-16.1 includes group life insurance policies within the definition of "property," the Court must determine whether this particular insurance policy falls within the statute. The crucial statutory language states that the "augmented estate means the estate passing by testate or intestate succession, real and personal. . . ." Va. Code § 64.1-16.1. Having already determined that life insurance policies are personal property within the meaning of the statute, the only question that remains is whether the decedent took action that would somehow remove this policy from the ambit of the relevant Code provision. Respondent argues that the policy was transferred prior to the decedent's marriage to Petitioner, and therefore, the policy is exempt from the statute. See Brief for Respondent at 13 (arguing that the "Act does not call for the inclusion of property transferred prior to the marriage of the decent and the surviving spouse") (emphasis in original). Although Respondent accurately states the law, application in the present case forces this Court to reach a contradictory result.

Under Virginia law, "the beneficiary, during the life of the insured, [has] no vested interest in the policy." *Smith v. Coleman*, 184 Va. 259, 270, 35 S.E.2d 107 (1945). Rather, the beneficiary has a "mere expectancy quite similar to that of legatee during the life of the testator." *Id.* Conversely, "the right of the insured to the contract of insurance [is] absolute." *Id.* As the Supreme Court recognized, the insured "could have defeated the expectancy of the beneficiary in many ways . . . he could have exercised the power of appointment and named another beneficiary." *Id.*; see also *Bickers*, 197 Va. at 152-53 (reaffirming that the insured "having reserved the right to change the beneficiaries in the policies . . . was the full owner of the contract of insurance, and the beneficiaries, whosoever they may have been, enjoyed a mere expectancy in the policies") (citations omitted). The Supreme Court, in *Bickers*, added that "the test for determining whether a writing . . . is testamentary in character is whether the maker of the instrument intended the instrument to have any effect until after his death, or whether he intended to transfer some present interest." 197 Va. at 153.

The question, therefore, put into the present context is whether the decedent, in naming the Respondent as the beneficiary of his group life insurance policy, "actually divested himself *in praesenti* of an interest in the subject matter or has he made only an illusory transfer during his lifetime?" *Id.* at 153. In the present case, it is clear that the decedent neither intended, nor made a present transfer of his ownership of the group life insurance policy. The decedent's decision to name the Respondent as the beneficiary can only be seen as evidencing a testamentary intent, not effecting a transfer of the policy. Taken together, therefore, *Bickers* and *Smith* support the conclusion that the decedent made no transfer of the insurance policy prior to the marriage, but rather, retained ownership of the policy until his death. Accordingly, because the decedent owned the insurance policy until his time of death, the policy falls within the ambit of § 64.1-16.1 and must be included within the surviving spouse's augmented estate.

## Conclusion

For the foregoing reasons, the Court holds that, based upon the plain meaning of Virginia Code § 64.1-16.1, the terms "estate" and "property" include, within their given definitions, group life insurance policies. Further, because the policy in question was not transferred to the Respondent prior to the decedent's marriage to Petitioner, the policy must be included within the

estate for the purpose of calculating the surviving spouse's one-third statutory share of the decedent's estate. Accordingly, the Court grants Petitioner's cross-motion for Summary Judgment.